TISDALE, Admx., v. THE CONNECTICUT MUTUAL LIFE INSURANCE COMPANY.

1. Evidence: OPINIONS OF WITNESS. The opinions of a witness are not admissible upon a matter which is not a question for the determination of experts. But the facts upon which the opinions are based must be stated, nor will the difficulty of stating such facts in detail change the rule.

2. —— DEATH. While the conduct and character of a party alleged to be dead may be shown as circumstances tending to prove or disprove his death in an action wherein that is a contested question, yet these facts must have occurred or the character been recognized within such reasonable time prior to the principal fact as that they may justly be supposed to afford some light tending to establish or refute it.

3. —— EXCLUSION OF TESTIMONY. The exclusion of evidence offered after both parties have rested their case, is so much a question of discretion for the trial court, that its ruling will not be disturbed where there is no showing that such discretion has been abused.

4. Instruction: ABSTRACT PROPOSITIONS. The refusal of an instruction containing an abstract proposition of law, which, though in itself correct, may, under the facts of the case, have a tendency to mislead the jury, is not erroneous.

5. Evidence: DEATH: LETTERS OF ADMINISTRATION. The bare fact that a man who has disappeared and whose death is contested, was seen alive within three years prior to the granting of letters of administration upon his estate, will not be sufficient to overcome the presumption of death arising from the issuing of such letters.

6. Instruction: REFUSAL. The refusal of an instruction which is substantially embodied in those given is not ground for reversal.

*Appeal from Jackson District Court.*

SATURDAY, OCT. 9.

ACTION upon a life insurance policy. This case has before been in this court, and the decision may be found

reported in 26 Iowa, 170. Upon the return of the cause to the District Court another trial to a jury was had, and resulted in a verdict for plaintiff for the amount of the policy and interest, $1,662.50. The only question of fact in the case was as to the death of the insured, Edgar Tisdale. The further necessary statements for the understanding of the points decided will be found in the opinion. The defendant appeals.

*Adams & Robinson* and *De Witt C. Cram* for the appellant.

*Allison, Crane & Rood* for the appellee.

COLE, J. — I. The evidence on the part of the plaintiff to establish the fact of the death of the insured consisted

1. EVIDENCE: opinions of witness. mainly in showing that he was about thirty years of age; had been married about three years; was living pleasantly and happily with his wife; had formerly been engaged in business in Dubuque, Iowa, but recently in Owatona, Minn.; that his wife had gone with her father, a few days before, to Dubuque on a visit; that very shortly after she left, he concluded a contract of sale of his business and property in Owatona, which had been pending prior thereto, with a view of returning permanently to Dubuque; that he obtained in part paymen' for his property two one thousand dollar drafts on Chicago, which he declined to sell to the bank in Owatona, because of the discount demanded; that he left Owatona for Chicago about the 22d of Sept., 1866, for the purpose of settling up his business and debts there, and then going to Dubuque, and shortly thereafter to go to Owatona and settle up fully his business and then return for permanent settlement to Dubuque again; he took to Chicago with him the two Chicago drafts and also some money. On arriving at Chicago he stopped and obtained a room at the

Sherman House, and his baggage, a valise, was put therein; he obtained the money on his two drafts, settled and paid his debts in Chicago, being only three or four small bills (less than a hundred dollars in all), and was then out of debt, and on the 25th day of September, by invitation, took dinner, at another hotel, with a friend; after dinner the friend accompanied him to the southwest corner of Lake and Clarke streets, where they parted, Tisdale telling his friend that he was going by rail that night to Dubuque to meet his wife; he had, during his stay in Chicago, mentioned to several acquaintances his purpose of returning to Dubuque and his anxiety to meet his wife, to whom, the evidence shows, he had written, almost daily, letters indicating his affection for and anxiety to meet her. He was never seen by any one after he parted with his friend on the southwest corner of Lake and Clarke streets. His wife and family, because of his failure to return to Dubuque, became alarmed for his safety, and in three or four days a brother-in-law went to Chicago in search of him, found his valise in his room at the Sherman House and his bill unpaid, but no tidings whatever of Tisdale; private detectives were employed to find him, dead or alive, and to ascertain the cause of his absence; diligent inquiries and efforts were made by the detectives, but all were fruitless; a reward of one thousand dollars was offered and published in two of the leading papers of Chicago for any information leading to his discovery, dead or alive, and no traces of him have ever been discovered. Letters to the plaintiff, of administration upon his estate, had been duly granted by the County Court of Dubuque county prior to the bringing of this suit.

The defendant, to show that Tisdale was not dead, offered to read in evidence the depositions of four detective police officers of Chicago, of from three to six years'

experience each as such officers; the depositions in substance stated that they knew the business streets, places of amusement, etc., and the character of the people frequenting them, and the facts to enable them to form an opinion as to the safety of persons of good character and conduct who should, in Chicago, visit places of amusement or business either by day or night; that they each had an opinion, but the facts on which they based their opinion were such in kind and number as that they could not state them all in detail, and that in their opinions a man would be perfectly safe and in no danger whatever there — also, if he minded his own business, he would be safe in places of bad repute there; and also that they had searched for Tisdale, and from their knowledge of facts, which they could not state in detail, they severally testified that they did not think he was murdered.

These depositions were objected to as being immaterial, mere opinions of witnesses, and incompetent. The court sustained the objection and excluded the depositions, and this is assigned as the first error.

That there was no error in this ruling is too manifest to require any argument to sustain. It was not a question for experts to determine; and if the mere opinions of witnesses could be taken upon such a fact, it would be difficult to find an ultimate fact upon which the opinion of a skilled or intelligent witness could not be taken. It would doubtless be competent to show that the place where a man was last seen was either safe or unsafe to human life; but the *facts* showing such safety, or the want of it, must be proved to the jury. A mere opinion without such facts cannot be competent. Nor will the difficulty in showing all the facts in detail whereby it is made safe or unsafe excuse a party from proving the facts making it such, to the satisfaction of the jury.

II. The defendant also offered in evidence the depositions of four or five witnesses, who severally testified that 2. — death. Edgar Tisdale, the insured, lived with his brother Luther Tisdale, in Beloit, Wis., about 1852 to 1854; that said Edgar secretly absconded and was gone for a considerable time before he was heard from, and that, shortly after he was missed, reports were current in the community and with his family that he had been murdered in Chicago; that he was a wild "harum scarum" boy, of bad habits and loose moral character. These depositions were also excluded on the objection of plaintiff, and thereon the second error is assigned.

While it is true that the character and conduct of the party alleged to be dead may be shown in evidence as circumstances tending to prove or disprove his death in such cases, yet these facts must have occurred, or the character have been recognized, within such reasonable time prior to the principal fact as that they may justly be supposed to afford some light tending to establish or refute it. Remote acts as well as remote consequences are alike excluded from the consideration of the jury. It is a question of law for the court to determine whether the consequences for which a recovery is claimed, or the facts sought to be proved to establish an issue, are sufficiently proximate to entitle them to consideration, or so remote as to exclude them. In this case, the facts sought to be proved took place some twelve or fourteen years before, and when the party was a mere boy of from fourteen to seventeen years of age. We cannot say, under all the circumstances in this case, that the District Court erred in excluding these depositions. The chief justice desires it to be stated that he is of opinion that the evidence of the fact of the previous mysterious disappearance of Tisdale ought to have been admitted in evidence — that is, that it is not so remote as to be for

that reason incompetent. But, under the circumstances, it is his opinion that the exclusion of the evidence ought not to operate to reverse the judgment, since we have all the evidence in the record, and can see that the rejected evidence, so far as he regards it competent, is not of such weight that it ought to have controlled or changed the result.

III. The plaintiff had taken the depositions of two witnesses to disprove the statements of the witnesses as to the absconding from Beloit, and the bad character; but did not offer to read the same in evidence to the jury. After both parties had rested, the defendant offered to read these two depositions in support of the defense.

3. —— exclusion of testimony.

The plaintiff objected because they were immateria. and also on the ground that the defendant as well as plaintiff had rested the case. The court sustained the objection, and this ruling is assigned as the third error.

For the reasons stated under the second point above, this ruling is affirmed. And in any event, since their admission at that stage of the proceedings was a question of discretion, and there is no showing of any abuse of that discretion, or of any prejudice to the defendant thereby, this court would not interfere with it.

IV. The defendant asked the court to give, among other instructions, the following, to wit: "In accounting for the absence of Mr. Tisdale you are not allowed to presume that he was murdered as an independent fact, rather than that he has absconded, because murder being a greater crime than absconding, it is, independently considered, less probable." This instruction was refused and such refusal is now assigned as error.

4. INSTRUCTION: abstract propositions.

Even if it be admitted that the instruction as asked contains a correct abstract proposition of law, it would

not follow, in view of the other instructions given in the
case, that there was error in its refusal.   It is at best but
a purely abstract proposition.   It is not moulded or
adapted to the facts of the case, upon any hypothesis the
evidence tends to establish ; and it could not therefore
afford any light or guide to the jury in determining the
question submitted to them.   The court very properly
submitted to the jury the question whether Mr. Tisdale
was dead, to be determined by them upon all the facts
and circumstances proved, regardless of the manner of his
death, whether by casualty or by crime.   The instruction
as asked was not only an abstract proposition but it was
liable to mislead the jury, and there was no error in
refusing it.

V.  The defendant also asked this instruction, to wit:
"Proof that Mr. Tisdale was last seen within three years

5. EVIDENCE:     alive and well and not exposed to any peril,
death : letters
of administra-   would be sufficient to overcome the presump-
tion.
                 tion of death arising from the issuance of
letters of administration," which was refused, and thereon
error is assigned.

It can hardly be the law, we think, that the bare fact
that a man was last seen alive at any time, even three
days, prior to the granting of letters of administration
upon his estate, will be sufficient to overcome the pre-
sumption of his death arising from the issuance of such
letters.   The probate court, whose jurisdiction to grant
letters of administration depends upon the fact of the
death, may have had before it proof of this particular fact
of being last seen alive, and also of other facts sufficient
to justify the conclusion of the death.   And to hold that
the repeating of the proof of this single fact to a court,
before which the issue of the death is again raised, shall
overcome the conclusion of the probate court, based, as it
may have been, upon this and other facts, would be to

indulge in every presumption against the correctness of the action of the probate court, and surely this cannot be the law. It will be noticed that the instruction asked is not (as appellant's counsel argue) that if it is made to appear affirmatively that the letters were issued on proof of disappearance alone then the presumption therefrom would be overcome by proof that he was seen, etc., within three years. As asked, it was rightly refused.

VI. The fourth instruction asked by defendant and refused is substantially embodied in the seventh given by the court, and hence no prejudice resulted to defendant by its refusal.

6. INSTRUC-
TION: refusal.

One sentence of the ninth instruction given by the court is objected to by the defendant, and is made the basis of the last assignment of error. The objection to the sentence is, that it limits the points upon which the jury are to rest their determination as to the death of Tisdale. But this objection is not, in point of fact, well founded, in view of the whole charge, which leaves the entire field of inquiry and consideration upon the whole evidence open to the jury. The entire charge of the court, when taken together, is a full and fair embodiment of the law as applied to the facts and circumstances disclosed by the evidence; to which we have also given our careful consideration.

Affirmed.