WILLIAM ·C. SPEER, JOHN M. BLACK and SAMUEL J.
    BLACK, Appellants, v. MARY JANE SPEER.

**Wills:** MENTAL CAPACITY: PHYSICAL WEAKNESS: EVIDENCE. In' seeking to set aside the probate of a will on the ground of mental disability resulting wholly from physical illness, the sole question involved is the testator's consciousness and ability to understand what he was doing at the time he made the will; and evidence of unconsciousness on days preceding or following the execution of the will is of little probative value. In the instant case the evidence is held insufficient to justify submission of the question of whether the testator at the time the will was executed was incapable of making a valid will.

**Same:** EVIDENCE. Where a testator was suffering from progressive physical illness, evidence that on the day following the execution of the will the testator seemed to be in an unconscious condition was not admissible to show his condition on the day previous: Nor was the exclusion of evidence touching his physical condition, which added nothing. to the testimony of the witness already given, improper: Nor was the exclusion of the statement that testator could not indicate that he understood what was said to him improper, or that his recognition was the same as when in good health.

**Same:** DECLARATIONS OF ATTESTING WITNESS: HEARSAY EVIDENCE. Proof of declarations by a deceased attesting witness to a will, made in disparagement of the testator's capacity, are hearsay and not admissible in an action to set aside the probate of a will.

**Same:** EVIDENCE OF TESTAMENTARY CAPACITY. The opinion of a witness as to a testator's mental capacity to execute a will, which is based entirely upon the physical weakness due to the progressive illness of the testator, at times other than when the will was executed, either upon the same day or different days, has no probative force and should not be received.

*Appeal from Jasper District Court.*—HON. K. E.
        WILLCOCKSON, Judge.

WEDNESDAY, NOVEMBER 17, 1909.

REHEARING DENIED TUESDAY, FEBRUARY 15, 1910.

ACTION at law to set aside the probate of a will. At the conclusion of plaintiffs' evidence the court sustained a motion to direct a verdict for defendant, and from a judgment against the plaintiffs for costs rendered on such verdict the plaintiffs appeal.—*Affirmed.*

*Ż. F. Yost* and *O. P. Myers,* for appellants.

*E. J. Salmon* and *Geo. C. Kipp,* for appellee.

McCLAIN, J.—An instrument purporting to be the last will and testament of Alexander Speer was admitted to probate in the district court of Jasper County on February 17, 1902. It purported to have been executed on the 3d day of the same month, and it appeared that the testator died on the 6th. By this instrument the testator, who was without issue, left his property to defendant, his surviving widow. In August, 1906, within less than six months of the expiration of the statutory period for instituting action to set aside the probate of this instrument, the plaintiffs, William C. Speer, a brother of testator, and John M. and Samuel J. Black, his nephews, instituted this action to set aside said probate on the ground that the instrument purporting to be a will was admitted to probate without any contest, and that it was not the last will and testament of Alexander Speer, for the reason that it was procured by the fraud and undue influence of defendant, the sole beneficiary therein, and that said testator was of unsound mind at the time said instrument was executed, and on the further ground that said testator was unconscious and in such physical condition at the time said instrument purports to have been executed by him that he could not sign the same, and never did sign the same, so that it is not his will. We find no evidence in this record

tending in the remotest way to show affirmatively any undue influence exercised upon testator in connection with the execution of his will, and we find no evidence of a diseased mind which would indicate that if the instrument was consciously and intentionally executed it was not entitled to probate. The sole question which plaintiffs attempted by their evidence to present was whether testator was so enfeebled in mind by physical disease that he was unable to exercise the discretion necessary to make a will. The complaints of appellants are: First, that there was enough evidence to go to the jury on the question whether testator was on the day of the execution of the will sufficiently conscious to enable him to execute it; and, second, that the court erred in rejecting evidence which, if admitted, would have required the submission of the case to the jury.

I. The disease of which testator died is described by the witnesses as broncho-pneumonia with pleurisy, with which testator had been seized about five days before the will was executed, and of which he died the second day after its execution. As testator's sickness was wholly physical, proof of his condition as to lethargy, suffering, or unconsciousness on days preceding or following the execution of the will is entitled to very little consideration; the sole question being whether at the time of its execution he was conscious and able to understand what he was doing. *Fothergill v. Fothergill*, 129 Iowa, 93. Only two of the witnesses saw him on the day when the will was executed. Neither of these witnesses was present at the time of its execution, or attempted execution. They speak of his physical weakness, his failure to recognize them, and his apparent inability to converse as to his condition or his affairs. Without considering the evidence which was excluded by the court, we are unable to find anything in the record substantially tending to show that testator may not

1. WILLS: mental capacity: physical weakness: evidence.

have been in such condition wnen the will was in fact executed that he could understand what he was doing and express his deliberate purpose as to the disposition of his property.

Mere mental weakness, not due to mental disease, but solely to physical infirmity, does not constitute mental unsoundness. *Hanrahan v. O'Toole,* 139 Iowa, 229. On the other hand, it is well settled that there may be testamentary incapacity without actual insanity or unsoundness of mind. *Manatt v. Scott,* 106 Iowa, 203; *Garrison v. Hubbard,* 110 Iowa, 7. But mere weakness of mental power will not render a person incapable of executing a will. It is not necessary that he should be competent to make contracts or transact business. Old age and failure of memory do not of themselves necessarily take away a testator's capacity to dispose of property. *Perkins v. Perkins,* 116 Iowa, 253. There is nothing in this case to bring it within the case of *In re Wiltsey's Will,* 135 Iowa, 430, where it appeared that relatives in attendance upon testator at the time the will was executed took advantage of his lack of mental capacity due to sickness to practically dictate to him the disposition which he should make of his property. In *Duggan v. McBreen,* 78 Iowa, 591, there was affirmative evidence to show that testator was in confusion as to the person and objects which he would reasonably have had in mind in an attempt to dispose of his property.

Here the disposition was not complicated, and there is nothing to indicate that the execution of the will was not simply the carrying out of a plan previously and definitely entertained, so that the only mental capacity necessary to be exercised was that of determining whether or not he should make a will in that form. We are satisfied that the evidence as admitted by the court did not present such a case as to justify the submission to the jury of the question whether testator at the time this instrument was

executed was incapable of making a valid will. A verdict setting aside the probate of the will would, we think, have been without proper support. *Fothergill v. Fothergill,* 129 Iowa, 93.

II. Turning now to the many assignments of error alleged to have been committed in sustaining objections to questions or striking out portions of answers calling for

2. Same: evidence.

opinions of witnesses as to testator's physical condition on the day on which the will was executed, we need refer to but a few instances to illustrate the line of decision adopted by the trial judge. ' Statements of the witness Lyda Kenyon, as to testator's condition, such as that he "seemed to be suffering," "seemed to be in a stupor," and did not talk to her that day "because he was too sick," related to the day following that on which the will was executed, and, under the circumstances of the case, we think could not be considered as showing what his condition was on the preceding day. He was suffering from a progressive illness, and he may well have been in a much worse condition than when he signed the will.

The testimony of witness Dibbel that, when he saw testator on the day on which the will was executed, it seemed to be hard work for him to breathe, added nothing to the statement already made that the manner of his breathing "seemed to be labored, heavy."

A portion of an answer of witness Thomson, in which he stated that, when he saw testator on the day on which the will was executed, he "could not indicate that he could understand what I said to him," was properly stricken out as a mere inference, and, if it had been allowed to stand, could not have added any weight to the other testimony of the witness on the same subject.

An objection to a question to the same witness as to whether the recognition of the testator at this time was the same as his recognition in good health was properly sustained, for the reason that the question was altogether

too indefinite to lead to any answer of probative value. Many other alleged errors of the same kind have been investigated in the record, with the conclusion that none of them resulted in the exclusion of testimony which would have added anything to the weight of the testimony of the witness.

III.   One James Martin, deceased when the case was tried, was an attesting witness to the will.   Plaintiffs offered to show that said Martin, immediately after attesting the will, made declarations to the effect that testator had waited too long, and that he (Martin) was sorry he had signed the will as a witness thereto, and that if he had it to do over again he would not do it, and that testator did not know what he was doing.   The court refused to receive this evidence, and appellants assign this refusal as error.   The offered evidence was clearly incompetent as hearsay, unless the fact that Martin was an attesting witness rendered it competent.   The argument is that the validity of the will is presumed to stand, in the absence of other evidence upon the faith and credit given to the attesting statement of Martin that testator signed it, and that Martin's attestation therefore stands as affirmative evidence of a fact, and his declarations inconsistent with his attestation should be received to impeach its effect.   We may concede that the mere formal difficulty of the want of a preliminary question to Martin as a witness calling upon him to say whether he made such a declaration in order to lay the foundation for the impeaching testimony ought not to stand in the way of the receipt of the impeaching evidence, if it is properly impeaching.   There are analogies for dispensing with such formal step where it is impossible by reason of death or absence of one who would otherwise be a witness.   See, for instance: *Felder v. State*, 23 Tex. App. 477 (5 S. W. 145, 59 Am. Rep. 777); *Mattox v. United States*, 156 U. S. 237 (15 Sup.

3. SAME: declarations of attesting witness: hearsay evidence.

Ct. 337, 39 L. Ed. 409); *People v. Elliott,* 172 N. Y. 146 (64 N. E. 837, 60 L. R. A. 318). But the difficulty seems to us to be much deeper. The offer was to show by way of affirmative proof that testator was incapable of executing a will by testimony of witnesses who heard Martin say so. It does not appear in this record whether on the formal offer of the will for probate Martin was called and testified, or not. If he were dead or beyond reach, proof of the genuineness of his signature would be sufficient. If he were in fact present in court, it would be sufficient to justify the probate of the will, in the absence of any contrary evidence, that Martin should testify to signing the will at the request of the testator. There would have been no occasion to examine Martin as to testator's capacity, unless an issue had been raised with reference thereto, and until some evidence had been introduced in support of an allegation of want of such capacity, for in that respect the contestants would have had the burden of proof, and the testator would have been presumed sane until some evidence had been introduced to the contrary. *Kirsher v. Kirsher,* 120 Iowa, 337; *In re Will of Dunahugh,* 130 Iowa, 692; *In re Goldthorp's Estate,* 115 Iowa, 430. We think therefore that the admission of the will to probate gave rise to no presumption of testimony, express or implied, by Martin as attesting witness that testator was of testamentary capacity. The law afforded the necessary evidence of that fact by way of a presumption so long as the presumption remained uncontroverted. To now allow the plaintiffs contesting the validity of the will on the ground of want of mental capacity to prove Martin's declarations is to enable them to make out a case by showing the declarations of a third person which were wholly inadmissible as hearsay. In other words, the will stands as to the mental capacity of testator upon a presumption of law regardless of any testimony by subscribing witnesses as to that fact. Plaintiffs, having the

burden of introducing evidence on the question, can not sustain that burden by offering evidence which is in its very nature incompetent.

There is another view which to our minds is controlling. The statute provides that a will, to be valid, must be in writing, signed by the testator, and "witnessed by two competent persons." Code, section 3274. So far as appears, testator complied with the requirements of the statute by expressing his will in writing, by signing such writing, and by having two competent subscribing witnesses affix their signatures to a proper attesting clause, reciting the execution of the will in their presence by testator with the declaration that it was his last will and testament, and their subscribing as witnesses at his request and in his presence. So far as appears, testator died in the belief that he had made a valid will. It is now proposed to invalidate that will by proving that one of the persons who signed it as witness afterwards made random declarations to the effect that he thought testator not to have been capable at the time to execute a will. If a subscribing witness may defeat the very purpose for which he is requested by the testator and authorized by law to affix his signature to the attesting clause, by simply making general statements indicating his belief that the testator was not of sound or disposing mind, which declarations may be proven in his absence or after his death and years after they were made, then another peril is added to those already surrounding the exercise by living persons of the statutory right to dispose of their property by will. This can not be in accordance with the policy of the law. It can not have been the purpose of the Legislature in providing for subscribing witnesses to make the persons thus chosen by the testator competent to defeat his intention by such random declarations.

Appellants' contention is not, however, without support in authority. Counsel have cited five cases, and we

find no others, which seem to sustain their position. *Harden v. Hays,* 9 Pa. 151; *Abraham v. Wilkins,* 17 Ark. 292, 321; *Townshend v. Townshend,* 9 Gill (Md.) 506; *Colvin v. Warford,* 20 Md. 357, 385; *Otterson v. Hofford,* 36 N. J. Law, 129 (13 Am. Rep. 429). This is the view adopted in 2 Wigmore, Evidence, sections 1505-1514. The contrary conclusion has been reached in *Stobart v. Dryden,* 1 M. & W. 615, and *Runyan v. Price,* 15 Ohio St. 1 (86 Am. Dec. 459). And this conclusion finds some support by way of analogy rather than by express decision in *Kent v. State,* 42 Ohio St. 426; *McFadin v. Catron,* 120 Mo. 252, 263 (25 S. W. 506); *Eppert v. Hall,* 133 Ind. 417 (31 N. E. 74, 32 N. E. 713); *Bessman v. Girardey,* 66 Ga. 18, 30; *Stevens v. Leonard,* 154 Ind. 67 (56 N. E. 27, 77 Am. St. Rep. 446); *Fox v. Evans,* 3 Yeates (Pa.) 506; *Bott v. Wood,* 56 Miss. 136. The precise question now before us is considered in Greenleaf on Evidence, and what is there said is so cogent that we quote the entire paragraph:

An exception to this [the hearsay] rule has been contended for in the admission of the declarations of a deceased attesting witness to a deed or will, in disparagement of the evidence afforded by his signature. This exception has been asserted, on two grounds: First, that as the party offering the deed used the declaration of the witness, evidenced by his signature, to prove the execution, the other party might well be permitted to use any other declaration of the same witness to disprove it; and, secondly, that such declaration was in the nature of a substitute for the loss of the benefit of a cross-examination of the attesting witness, by which either the fact confessed would have been proved, or the witness might have been contradicted, and his credit impeached. Both these grounds were fully considered in a case in the exchequer (*Stobart v. Dryden,* 1 M. & W. 615), and were overruled by the court: The first, because the evidence of the handwriting, in the attestation, is not used as a declaration by the witness, but is offered merely to show the fact that he put his name

there, in the manner in which attestations are usually placed to genuine signatures; and the second, chiefly because of the mischiefs which would ensue, if the general rule excluding hearsay were thus broken in upon, for the security of solemn instruments would thereby become much impaired, and the rights of parties under them would be liable to be affected at remote periods by loose declarations of the attesting witnesses, which could neither be explained nor contradicted by the testimony of the witnesses themselves. In admitting such declarations, too, there would be no reciprocity; for though the party impeaching the instrument would thereby have an equivalent for the loss of his power of cross-examination of the living witness, the other party would have none for the loss of his power of re-examination. 1 Greenleaf, Evidence (15th Ed.), section 126.

This section is omitted from the text of Prof. Wigmore in his (the 16th) edition of Greenleaf's work.

We reach the conclusion that the court properly excluded the offers of proof as to the declarations of Martin, the deceased subscribing witness.

IV. The two witnesses who saw testator on the day, but not at the time, when this will was executed, after testifying to his condition, were asked questions relating to their opinions touching his mental capacity on that day, and error is assigned in the ruling of the court excluding evidence as to such opinions. One of these witnesses, a remote relative of testator, was asked to state whether in his opinion, as a result of the facts to which he had testified, testator was on that day of sound or unsound mind, and was capable of attending to the ordinary business affairs of life. We think objections to these questions were properly sustained, for the reason that there is nothing whatever in the testimony of the witness to indicate that the mind of testator was unsound, however it may have been weakened by his illness, and, as already indicated, mere incapacity at that time for attending to the ordinary business affairs of life

4. SAME: evidence of testamentary capacity.

would not tend to show incapacity at another time during that day to make a will. What this witness says as to the condition of testator two days before the will was executed could under such circumstances have been entitled to no weight, for, as already said, the testator was seriously sick, and there is no presumption that his mental faculties, as affected by such sickness, were not in entirely different conditions on those two days. *Fothergill v. Fothergill,* 129 Iowa, 93; *Blake v. Rourke,* 74 Iowa, 519.

The other witness, a minister to whose congregation the testator belonged, was asked whether testator on the date of the execution of the will, but at a different time on that day, was capable of transacting ordinary business and capable of intelligently disposing of his property. These questions were open to the same objections already indicated as to proposed testimony of the other witness. Incapacity to transact ordinary business, due to physical weakness, would surely not be sufficient to sustain an opinion that the testator was incompetent to make a will; and the testator may have been incapable, by reason of temporary stupor resulting from disease, of intelligently disposing of his property at that particular moment, although at another time during the same day he was sufficiently intelligent and conscious to exercise his judgment with reference to such a matter. For the reasons already indicated, we do not think the opinions of this witness with reference to the condition of testator two days after the will was executed were entitled to consideration. In short, we have a case where a man suffering from disease, but of perfectly sound mind so far as the evidence tends to indicate, was at times conscious, recognizing those about him and fully aware of his conditions and surroundings, while at other times he was in a stupor or apparently asleep, and we think that the opinion of a witness based upon the testator's condition at a time other than that at which the

will was executed would have no probative force with reference to his condition when the will was made.

The action of the trial court in· directing a verdict for defendant and entering judgment thereon is *affirmed*.