HATTIE S. RICHMOND, Appellant, v. FIRST NATIONAL BANK OF PLEASANTVILLE et al., Appellees.

BANKS AND BANKING: Conversion of Deposit Certificate. The
1  wrongful act of a bank in retaining certificates of deposit
   and refusing payment thereon to the owner amounts to a
   conversion, yet all damages are satisfied by returning the
   certificates to the owner, with interest thereon for the period
   of wrongful detention.

GIFTS: Unnatural Gift as Bearing on Mental Competency. While
2  a certain showing of mental weakness due solely to physical
   infirmity of the donor may be insufficient to present a jury
   question on the issue of mental competency, yet such showing
   may be amply sufficient when aided by a showing that the
   gift in question was most unreasonable and unnatural.

*Appeal from Marion District Court.*—LORIN N. HAYS, Judge.

SEPTEMBER 29, 1920.

APPELLANT, Hattie S. Richmond, claims that the defendant bank converted certain certificates of deposit transferred to her by her father. The administrators above named intervened, claiming, among other things, that the certificates belonged to the estate of the plaintiff's father, because he was mentally incapable to make the transfer. There was verdict and judgment against the plaintiff, and she appeals.—*Affirmed.*

*W. H. Lyon,* for appellant.

*Vander Ploeg & Johnson,* for appellees.

SALINGER, J.—I.   The appellant bases her claim that the bank was guilty of conversion on the fact that her father, W. A. Scott, by indorsement transferred to her certain certificates of deposit issued by the defendant bank; that the bank refused to pay the same when presented by her; and that it has refused to return same to her, and still retains them.

If she was lawfully the owner of the certificates, and the bank has done what she charges, its acts would constitute a technical conversion, and create the possibility of nominal damages.   They would be nominal only, because, on payment of interest for the time the certificates were wrongfully detained, there could be no substantial injury caused by the detention.   The defendant stands as if an interest-bearing note were wrongfully detained, but finally surrendered.   For all practical purposes, the bank stands indifferent between the real contenders; for it is willing to return the certificates to the one who shall be found by the court to be entitled to them, on determination of intervention.

1. BANKS AND BANKING: conversion of deposit certificate.

II.   The widow of W. A. Scott, as administratrix, and Metcalf, as administrator, have intervened, and say that the certificates belong to the estate of the decedent, W. A. Scott, because, even if it were conceded that he indorsed the same to the plaintiff, he was, at the time, mentally incompetent. If, then, the jury can be sustained in finding, as it did find, that Scott was, at said time, incapable, that ends the controversy.   In that event, plaintiff cannot maintain conversion, because she does not own the certificates; and the bank is content with said finding, and stands ready to satisfy the interveners, by turning said certificates over to them.

2. GIFTS: unnatural gift as bearing on mental competency.

Holding, then, that the jury could find such alleged mental incapacity would, since it is not claimed the transfer was on consideration, and since no innocent purchaser is involved, be decisive; and whether the jury can be sus-

tained in making such finding is, therefore, the inquiry first in order.

We agree with appellant that the mere impairment of physical powers by age, and the incident loss of mental vigor, are not enough to show incapacity to direct the business of determining the disposition of property among one's children (*Slaughter v. McManigal,* 138 Iowa 643) ; and that, as a general rule, the decreased bodily and mental powers incident to advanced years do not, in the absence of abnormal conditions, constitute unsoundness of mind, within the meaning of the law *(McGuire v. Moorhead,* 151 Iowa 25) ; and that mere mental weakness, not due to mental disease, but solely to physical infirmity, does not constitute mental unsoundness *(Speer v. Speer,* 146 Iowa 6) ; and that physical weakness would not incapacitate, unless mental weakness is shown as a resultant condition of the physical weakness (*In re Estate of Workman,* 174 Iowa 222).

But, applying these rules of law, is there not enough to make mental capacity a jury question? Grant, that, up to the time this controversy was initiated, the competency of W. A. Scott to transact his own business affairs had never been questioned by the defendant bank or anyone else; grant that the bank cannot be its own jury, and defend its refusal to surrender the certificates to the plaintiff by declaring that her father was mentally incompetent,— and still the question remains whether the evidence was such as that we may not disturb the finding that W. A. Scott was mentally incapable to make an effective transfer.

Interveners have the burden of proof on this. Witnesses called by them said that, a few days before his death, Scott was in bed; that his voice and he himself were weak; and that his physical condition was poor. One witness says Scott was sick, a good deal of the time, and she had seen him fall, and helped him up. Two of the witnesses said they had seen Scott fall, and had to help him up. Another witness saw him fall once; but this time, he got up without help. Neither of these witnesses, however, said any-

thing with reference to mental weakness or impairment. Though Scott was 86 years old, it may be granted that all preceding will not sustain the finding of mental inability to make a gift to a daughter, by indorsing certificates of deposit to her. But, in addition, there was testimony from which, if believed by the jury, it could find that Scott was, for a year before his death, unable to dress himself, or care for himself in any manner; that, if he went outside the house, he would fall, and it was necessary for his wife or neighbors to come to his assistance; that he would get lost in his own home, and, at the time when plaintiff was at his home, he was so weak that he was unable to feed himself, or raise his hand for that purpose; that he was as helpless as a child; that, during this time, he was unable to write; and that this condition had existed for some two or three weeks prior to his death, and during all the time that his daughter was with him.

There was testimony upon which the jury could find that, for six months prior to the transaction involved here, Scott had been confined to the house, most of the time in bed, from which he could not arise without assistance; that, when the witnesses went into his room, he had so far lost consciousness and mind that he did not realize they were in the room; that, shortly before plaintiff's visit, one of the neighbors went to assist his wife in bathing him, and, although he was in a filthy condition, he refused to permit this, and the effort was abandoned, because of his struggles, and because they did not want to wear him out. This was shortly before the time plaintiff arrived at his home.

Grant, for the sake of argument, that all that precedes still does not make a jury question of mental capacity to make the alleged gift. But what shall be said of unreasonableness and the unnatural character of the gift? True, one who *is* competent may make an unreasonable, and even an utterly unnatural, disposition of his property. But that is so only *if* he is competent. But, when the question is whether he is competent, then the fact that he deals with his property in an unnatural manner will, when added to

such testimony as has been adverted to, warrant a jury in finding that the party was incapable of transacting business and of disposing of his property. An unnatural and unreasonable disposition of property may be shown, as bearing on the issue of mental condition. *Manatt v. Scott,* 106 Iowa 203; *Bever v. Spangler,* 93 Iowa 576.

What warrant had the jury for concluding that the alleged gift was both utterly unreasonable and unnatural? If it believed the testimony, it could find that Scott had no property, except the certificates and an undivided half of a small homestead, worth about $600. It could find that the daughter who now claims all of the father's property was never at the home, never assisted in caring for her father until a few days before his death, and that the transfer to her was made a few days after her arrival. Her father had seven children other than plaintiff, and there is nothing to show that she had a different or other claim upon him than had any of his other children. He left a widow, who had married him when he was a very old man; and the jury could find that the wife cared for him as a nurse, during the last six or seven years of his life, when he required almost constant nursing and care. This gift gave none of the other children anything. Not a dollar went to his widow from his estate, and not enough was left in the estate to pay the decedent's funeral expenses.

It would be truly a usurpation of power for this court to disturb the finding of the jury on this record.

As said, if this finding must stand, the conversion action fails for want of title in the plaintiff. It follows, judgment below must be and the same is—*Affirmed.*

Weaver, C. J., Evans and Preston, JJ., concur.