MARY NELSON, Appellee, v. NATIONAL ACCIDENT SOCIETY OF NEW YORK, Appellant.

No. 40784.

990

June 20, 1931.

Shull & Stilwill, for appellant.

Milchrist, Schmidt, Marshall & Jepson, for appellee.

Evans, J.—The insured was Alma St. Amour. The beneficiary was her mother, Mary A. Nelson, plaintiff herein. The policy was issued April 15, 1929. The death of the insured resulted on April 29, 1929. The policy provided for only a restricted liability. It provided indemnity for death from external, violent and accidental means resulting from one or more of nine specified ways, and none other. The specified cause or method of death which is relied on herein was paragraph 13, of Section C of the policy, as follows:

"At the hands of any burglar, highway-man or robber, when robbing the insured by force."

Having put this allegation in issue by general denial, the defendant purported to plead affirmatively as follows:

"6. By way of further answer this defendant states that

said policy of insurance contained among other things, this provision:

"'b.  This insurance does not cover \* \* \* any altercation or quarrel, or intentional injury inflicted by himself or any other person, sane or insane, except as covered by Section C, Clause 13.'

"'13.  At the hand of any burglar, highwayman or robber, when robbing the insured by force.'

"That the defendant states upon information and belief that the said Alma St. Amour was on April 29, 1929, murdered by an unknown person who was not robbing the said Alma St. Amour by force; and that therefore no liability accrued under said policy for which this defendant is liable."

Paragraph 9 of the court's instructions was as follows:

"Par. 9.  The defendant urges as another defense that provision of the policy which is set forth in paragraph two of these instructions to this effect:

"'b.  This insurance does not cover \* \* \* any altercation or quarrel, or intentional injury inflicted by himself or any other person, sane or insane, except as covered by Section C, Clause 13' \* \* \* '13.  At the hand of any burglar, highwayman, or robber, when robbing the insured by force.'

"You are told that the foregoing quoted provision of said policy does not cover any altercation or quarrel, or intentional injury inflicted by one's self or any other person, sane or insane, except injuries or death met at the hands of a burglar, highwayman, or robber, when robbing the insured by force.

"And so in connection with the foregoing you are instructed that if the defendant has proven to you by a preponderance of the evidence, the burden being on it so to prove, that the said Alma St. Amour came to her death by any altercation or quarrel, or intentional injury and death inflicted by any other person, other than at the hands of a burglar or robber, when robbing the insured by force, or by reason of the intentional act of some other person who was not, at the time, engaged in committing burglary or robbery by robbing the insured by force, then such fact or facts, if so established, would not bring the insurance and alleged claim of plaintiff within the terms of the policy in question, and

the defendant company would not be liable herein and your verdict will be for the defendant."

The appellant assigns error upon said instruction 9.

The court properly instructed in the first instance, that the burden of proof was upon the plaintiff to prove the allegations of her petition to the effect that the death of the insured resulted directly, solely, and independently of all other causes, by external, violent, and accidental means at the hands of a burglar or robber, who was robbing the insured by force,—all as provided by the terms of the policy. The complaint is that the instructions were contradictory. Instruction #9 was undoubtedly induced by the affirmative form of the defendant's pleading. The court evidently construed it as an effort of the defendant to plead exceptions to the general terms of its policy. We think, however, it must be said that the purported affirmative allegations were a mere repetition of the general denial. In order to sustain her burden of proof, as laid upon her by the court in the first instance, it was requisite that she prove the cause and method of death to be precisely what she alleged. This would necessarily negative every other cause, or method of death, whether affirmatively specified by the defendant or not. As relating to the cause and method of death, there was no burden upon the defendant even though it amplified its general denial in the repeated affirmative assertions. The defense of the defendant did not in fact rest upon any exceptional provision of the policy. The fact that the defendant should plead evidence or elaborate its denials in affirmative form, was not effective to shift upon it the burden of proof in any degree, even though such method of pleading be subject to criticism as tending to mislead the court. If the matters thus pleaded by the defendant had been in the nature of exceptions to the general provisions of the policy, a different question would be presented. It must be said that error was committed in the giving of instruction #9.

II. At the close of the evidence the defendant moved for a directed verdict on the ground, among others, that the policy called for "immediate notice" to the Company of the death of the insured. In the same connection it is contended that the proofs of loss furnished were not adequate to meet the requirement of the policy. Some days elapsed between the date of the

death and the date of receipt of notice by the Company. It appears that the insured was murdered on the night of April 29. She was engaged in the business of operating a hotel at Sioux City. She was killed in her own apartment. Her mother, the beneficiary, was a resident of Minnesota and was not present in Sioux City at the time of the death of the insured. The remains of the insured were taken to the mother's home where the funeral was held on May 4. On May 6, the plaintiff carried the insurance policy to her attorneys who on that date gave the requisite notice by registered mail, and therein requested that appropriate blanks for proof of loss be furnished. This notice was addressed to the defendant-company at its home office in New York City,—there being no local agency in Sioux City. Responsive to this notice the defendant forwarded to the attorneys blank forms of proof of loss. Every requisite indicated in this blank form was complied with and sworn statements from attending physician, from the undertaker, from officiating clergymen, and from the coroner, were furnished. The two special objections now urged, are that the preliminary notice was not "immediate"; and that the facts stated in the proof of loss were not of themselves sufficient proof that the insured came to her death as a result of the causes specified in the insurance policy. In the correspondence preceding the suit, no objection appears to have been made either to the notice or to the final proofs of loss. The argument is that the court should have held, as a matter of law, that the preliminary notice sent on May 6, was not a compliance with the requirement of the policy for immediate notice. The court submitted the question to the jury as one of fact and refused to direct a verdict on such ground. We think the court ruled properly. Lyon v. Railway Passenger Assurance Co., 46 Iowa 631. See also cases collected in 7 A. L. R. 187.

III. The appellant complains of the rejection of certain testimony offered by it upon the trial. The defendant called the witness Farley. The preliminary examination of this witness disclosed that he had been on the police force in Sioux City for seventeen years and that for thirteen years of such time he had served in the detective department, and a part of such time as the chief of such department. He made an investigation of the murder of the insured. The defendant put to this witness the following question:

"In your opinion, Mr. Farley, was this murder committed upon this woman by one who was at the time robbing her?"

Objection to this question was sustained. The contention of the appellant is that it was admissible as expert evidence. We think the question was clearly objectionable and hardly debatable. This question was quite specifically considered by this court many years ago in Tisdale v. Connecticut Mutual Life Insurance Company, 28 Iowa 12. In that case a like question was held objectionable as clearly invading the province of the jury. The question called for a mere process of reasoning, and a process of weighing probabilities from circumstances more or less uncertain. We do not think such proposed evidence is within the proper scope of expert evidence at all.

The foregoing comprise the principal errors relied on for reversal. For the error of instruction #9, the judgment below must be, and is, reversed.

FAVILLE, C. J., and STEVENS, ALBERT, MORLING, KINDIG, WAGNER, and GRIMM, JJ., concur.