MARISE J. McKEEVER, Administrator, Appellee, v. C. E. BATCHELER. Appellant.

No. 42609.

DECEMBER 11, 1934.

Whitney, Whitney & Stern, and Baldwin & James, for appellant.

Diamond & Jory, and Cornwall & Cornwall, for appellee.

KINTZINGER, J.—At about 5 p. m. on June 14, 1933, the decedent, Don Benjamin McKeever, a boy four years old, was struck by defendant's automobile and instantly killed, while in the act of crossing highway No. 10 to reach his home on the opposite side of the road. The car was traveling in an easterly direction at a speed of about 45 miles per hour. The highway is a graveled road about 30 feet wide, running east and west, and is practically level in front of the McKeever yard, with a slight rise to the east and west. There is a slight depression on the south side of the highway opposite a driveway into the McKeever yard. The boy was about 3 feet tall. There were some growing weeds and grass about one or two feet high along the south side of the highway and the depression, which to some extent obstructed a view of the boy from the roadway, as he emerged from the depression onto the highway.

Evidence on the part of the defendant tended to show that the boy suddenly emerged from the depression and weeds on the south side of the road, and started to run across the highway towards his home; that he was first observed by defendant when running across the highway about 25 feet ahead of defendant's car. Defendant testified that when he first saw the boy he attempted to get around him by turning to the left, as he thought that was the only possible chance of saving him.

Testimony on the part of plaintiff tended to show that the automobile ran about 90 feet after striking the boy before it stopped. Two of plaintiff's witnesses, Dilocker and Salzkorn, testified that they were at the scene of the accident the next morning about 10 o'clock, and while there heard the defendant make a statement to a number of bystanders, in which he pointed out car tracks, which he said were made by his car at the time of the accident. They testified that the tracks he pointed out ran in a diagonal direction northeast and southwest, and extended westward about 100 feet from where the boy was struck; that the tracks so pointed out ran from a point on the north side of the center of the highway, opposite the McKeever driveway, to a point on the south side of the center of the road 100 feet westerly; and that about 50 feet of such tracks were on the north, and 50 feet on the south side of the highway.

Seven of plaintiff's witnesses testified, over objections by the defendant, that they heard the description of the automobile tracks given by the two witnesses hereinabove referred to, and that the tracks described by them were exactly identical with tracks they saw shortly after the accident.

A motion by defendant for a directed verdict was. overruled, and, after submission of the case to the jury, a verdict of $3,500 was returned for plaintiff and judgment entered thereon. Defendant filed a motion for a new trial which was also overruled. Hence the appeal.

I. It is claimed the court erred in giving instruction No. 13, placing the burden of proving an emergency upon the defendant. In that instruction the court said:

"It is the *claim* of the defendant * * * that * * * he was confronted with an unexpected emergency by reason of the fact that plaintiff's decedent came suddenly and unexpectedly from a place off the * * * highway. * * * This claim of defendant is denied by the plaintiff *and the burden is upon the defendant to prove the existence of such emergency.*"

No such claim was alleged in the answer as an affirmative defense to plaintiff's action. It is the law, as expressed in another instruction, that the defendant is not liable for a mere accident, but is liable only for defendant's negligence. But if the instruction in reference to the burden of proving an emergency is correct, it could likewise be "claimed" that the burden is upon the defendant to show that the injury did not result from an accident. Such is clearly not the law.

"The general rule is that the burden of proof rests upon the party who has the affirmative of the issue, as determined by the pleadings. * * * This rule is founded upon the obvious purpose of facilitating justice by serving the convenience of the court; and as the rule as to burden of proof is a fixed rule of law, the burden never shifts from the party having the affirmative of the issue." 22 C. J. 68, section 14.

In an action for personal injuries, the burden is upon the plaintiff to establish, by a preponderance of the evidence, that the defendant was guilty of some want of ordinary care. But "where one is confronted with a sudden emergency, without sufficient time to

determine with certainty the best course to pursue, *he is not held to the same accuracy of judgment as would be required of him if he had time for deliberation.* (Italics ours.) Accordingly, if he exercises such care as an ordinarily prudent man would exercise when confronted by a like emergency, he is not liable for an injury which has resulted from his conduct, even though another course of conduct would have been more judicious or safer or might even have avoided the injury, as under such circumstances the injury is regarded *as an inevitable accident.*" (Italics ours.) 45 C. J. 710, section 92.

Emergency was not pleaded as an affirmative defense. The existence of an emergency is not an affirmative defense, but is one of the circumstances to be considered by the jury in determining whether or not the defendant was guilty of negligence. The burden always remains upon the plaintiff to establish the defendant's negligence, and this burden does not shift to the defendant. Gregory v. Sorensen, 208 Iowa 174, 225 N. W. 342; Hoover v. First American Fire Ins. Co., 218 Iowa 559, 255 N. W. 705; In re Estate of Stencil, 215 Iowa 1195, 248 N. W. 18; Johnson v. Prideaux, 176 Wis. 375, 187 N. W. 207; Louisville & N. R. Co. v. Wright, 193 Ky. 59, 235 S. W. 1.

In Gregory v. Sorensen, supra, loc. cit. 178, in considering the question of burden of proof, in relation to the defense of alibi in civil actions, this court said:

"The trial court told the jury: *'The burden of establishing this defense* (that the defendant was at a different place) *is upon the defendant.* * * *'* [Italics ours.] Clearly, that is wrong, because it was the appellee's duty to prove that the appellant was present and did commit the offense. Due to appellant's general denial, he did not have the burden of showing that he was not present at the time and place in controversy. * * * Therefore, the appellant did not have a fair trial. The instruction was prejudicial to him and gave too great an advantage to the appellee."

In Louisville & N. R. Co. v. Wright, 193 Ky. 59, 235 S. W. 1, the court said:

"The failure to exercise the best judgment in an emergency is not evidence of negligence, though the error be frought with lamentable results, *as one acting in a sudden crisis is not required*

*to exercise that deliberate judgment which time for reflection affords."* (Italics ours.)

Likewise, instruction No. 13, placing the burden of proving an emergency upon the defendant, gave too great an advantage to appellee, was misleading to the jury, and prejudicial to appellant.

 II. It is also claimed that the court erred in permitting seven witnesses to testify that certain tracks described by two other witnesses, named Dilocker and Salzkorn, were the identical tracks which they, the seven witnesses, saw at the scene of the accident shortly after it happened; the two other witnesses having testified that the defendant, on the morning after the accident, pointed out to them certain tracks on the highway which he said were made by his car at the time it struck decedent. Appellant contends that the questions asked these witnesses called for their opinion and conclusion and invaded the peculiar province of the jury. The witnesses Dilocker and Salzkorn were at the scene of the accident at about 10 o'clock the next morning. The defendant was there at that time, and, in the presence of these two witnesses, told a number of bystanders that certain tracks on the roadway then pointed out by him were the tracks made by his car when it struck the boy. The witnesses Salzkorn and Dilocker described the tracks pointed out by the defendant to them. Thereupon, seven other witnesses were all asked questions, substantially as follows: "Q. Did you see any tracks out there that evening *that would correspond and be identical with the tracks that you heard Mr. Dilocker and Salzkorn describe when they were on the witness stand during the trial of this case?"* Also "Q. * * * *From the testimony of Dilocker and Salzkorn,* * * * do you know these tracks to be the same tracks as the ones you saw there that evening?" These questions were objected to as being incompetent, irrelevant, and immaterial, calling for the conclusion or opinion of the witnesses, hearsay, and calling for evidence based upon testimony of other witnesses. The objections were overruled, and the witnesses were permitted to testify, over objections, that the tracks they saw out there the evening of the accident corresponded exactly with the tracks described by the witnesses Salzkorn and Dilocker, as being the tracks pointed out by the defendant the morning after the accident.

These witnesses were no better qualified to give an opinion as to the identity of these tracks than the jurors themselves. The

jury was as well qualified as the witnesses to determine whether the tracks seen by them were identical with the tracks described by the witnesses Salzkorn and Dilocker. "As to conclusions upon matters within the scope of common knowledge and experience, the jury is a tribunal well fitted to perform this task. To permit a witness to state to the jury his opinions as to the conclusions to be drawn from the concrete facts which he has observed would be to invade the peculiar province of the jury; and. therefore conclusions of that character are universally excluded." 11 R. C. L. 565; McMahon v. City of Dubuque, 107 Iowa 62, 77 N. W. 517, 70 Am. St. Rep. 143; Speer v. Speer, 146 Iowa 6, 123 N. W. 176, 27 L. R. A. (N. S.) 294, 140 Am. St. Rep. 268.

If these seven witnesses saw any automobile tracks at the scene of the accident shortly after it occurred, they should not have been permitted to testify that the tracks they saw *were exactly identical with tracks described by other witnesses*. It would be sufficient for them to describe the tracks they saw, whereupon the jury could draw all necessary inferences therefrom.

It is the settled rule of law that a witness may describe the marks, if any, their appearance, length, and other circumstances relating thereto, and thereupon the inference to be drawn therefrom becomes the province of the jury. 22 C. J. 518; Nelson v. Hedin, 184 Iowa 657, 169 N. W. 37; Dempsey v. City of Dubuque, 150 Iowa 260, 132 N. W. 758; Kelly v. Muscatine, B. & S. R. Co., 195 Iowa 17, 191 N. W. 525; Kiesel & Co. v. Sun Ins. Office, 88 F. 243, loc. cit. 249, 31 C. C. A. 515; Roziene v. Ball, 51 Iowa 328, 1 N. W. 668; Nelson v. Nat. Acc. Society, 212 Iowa 989, 237 N. W. 341; Nutt v. Southern Pac. Co., 25 Or. 291, 35 P. 653; Brewster v. Weir, 93 Ill. App. 588; Hurt v. St. Louis, I. M. & S. Ry. Co., 94 Mo. 255, 7 S. W. 1, 4 Am. St. Rep. 374; People v. Gray, 148 Cal. 507. 83 P. 707.

In discussing a question of similar nature, in Nelson v. Hedin, supra, loc. cit. 659, we said:

"An answer to such question, if it should be thought to amount to anything more than mere guesswork, could at best be the merest conclusion. It would doubtless be proper to prove the marks, if any, their appearance, length, and other circumstances relating thereto, and the jury could draw all legitimate inferences therefrom as well and as correctly as the witness."

In Dempsey v. City of Dubuque, supra, loc. cit. 267, we said:

"These facts were simple and sufficiently detailed to enable the jurors to understand the situation and make their own deductions. Even though expressions of opinion may be given where the situation cannot be laid before the jury with sufficient clearness to enable them to fully understand, * * * yet the rule is of general application that, when all the pertinent facts can be sufficiently detailed and described to enable the jurors to form correct conclusions without the aid of opinions from others, no exception to the rule excluding opinion evidence will be tolerated."

In Nelson v. Nat. Acc. Society, supra, loc. cit. 994, we said:

"The question called for a mere process of reasoning, and a process of weighing probabilities from circumstances more or less uncertain. We do not .think such proposed evidence is within the proper scope of expert evidence at all."

In Kiesel & Co. v. Sun Ins. Office (C. C. A.) 88 F. 243, loc. cit. 249, the court said:

"The general rule that facts, and not conclusions, should be stated, is a wise and salutary one, and cannot be too strictly followed. It tends to prevent fraud and perjury, and is one of the strongest safeguards of personal liberty and private rights. Whenever it is doubtful whether a case falls under the rule, or under one of its exceptions, the wise course is to place it under the rule."

The question as to whether or not certain automobile tracks seen by a witness are identical with, or the same tracks as, those described by another witness, is not a matter of expert opinion evidence. The questions cleary called for the opinion and conclusion of the witnesses, and clearly invaded the province of the jury.

For these reasons there was sufficient error to warrant a new trial. Other errors are alleged, but a consideration of them is deemed unnecessary. For the reasons pointed out, the judgment of the lower court must be, and is hereby, reversed.

MITCHELL, C. J., and STEVENS, ANDERSON, DONEGAN, and POWERS, JJ., concur.