E. R. Doane, appellee, v. Farmers Cooperative Company, a corporation, appellant.

No. 49619.

(Reported in 94 N.W.2d 115) .

JANUARY 13, 1959.

Finley & Teas and Breese & Cornwell, both of Mason City, for appellant.

Mason & Stone, of Mason City, for appellee.

PETERSON, J.—Plaintiff is a farmer and cattle feeder living near Thornton, Cerro Gordo County. In the fall of 1955 he was feeding 177 head of cattle. He had 137 head in one feed lot and 40 head in another. The average weight of the cattle was about 400 pounds. He had purchased the 137 head in October and after running them through his stock fields had placed them in the feed lot on November 15. His normal feeding program was six pounds of shelled corn and two pounds of protein supplement per day, together with corn silage for roughage. He fed them morning and evening.

On December 5 plaintiff received a telephone call from

defendant-elevator advising him they had some damaged corn for cattle feed if he was interested. He went to the elevator and found they had some corn which had been removed from the cornbins by reason of excess moisture. He bought 139 bushels. On December 6 defendant delivered the corn to plaintiff's farm. They placed 122 bushels in one wagon and 17 bushels in another wagon. He fed the cattle in the feed lot, where the 137 head were located, twice on December 6 from the corn in the smaller wagon. He again fed them from the same corn on the morning of December 7. This exhausted all the corn in the smaller wagon.

Later in the day of December 7 he discovered that one of his cattle was dead and the rest of them were off feed. When he discovered this he quit feeding the corn. In the next two or three days 21 head of cattle died and all of the rest of the herd became sick. He did not feed any of the corn to the 40 cattle in the other feed lot and none of those cattle became sick.

On December 8 he went to defendant-elevator and reported the loss of the cattle. The manager told him not to get excited; that the Board would no doubt treat him right. On the same day he called his veterinary, Dr. H. A. Janson, from Thornton. He examined the cattle and his diagnosis was that they were dying from poisoning. He suggested he take one or two of the cattle to Iowa State College at Ames, together with a quart jar of the corn, for examination. He had fed all the corn in the small wagon so he took the jar of corn from the larger load. This becomes significant in later consideration of the case. The report from Ames was not too conclusive, but, with the testimony of another veterinary called by plaintiff, it did sustain Doctor Janson's diagnosis of poisoning.

Defendant's manager testified that in September when the elevator bins were being filled an insect poison known as "914 Weevil Killer" had been applied to the corn. Whenever the employees detected the presence of weevils or bran bugs as the corn was being delivered they applied the weevil killer. It was applied on the basis of approximately two and one-half gallons per thousand bushels.

Plaintiff sued defendant for $3780 on the basis of the value of the 21 head of cattle that died, and the damage sustained by reason of sickness of the remainder of the herd.

The jury returned a verdict of $1365 in favor of plaintiff. Defendant has appealed.

Appellant assigns three alleged errors: First. Defendant's motion to direct a verdict should have been sustained, alleging there was too much speculation as to reason for the damage. Second. In refusing to give defendant's Requested Instruction No. III. It requested withdrawal from the jury of all reference to "914 Weevil Killer." Third. In refusing to give defendant's Requested Instruction No. IV. This pertained to plaintiff's damage on account of sick cattle.

I. The first and principal contention of appellant is that the trial court should have directed a verdict in favor of defendant. The theory of appellant is that there was no definite testimony showing that the death and sickness of the cattle were caused by the corn purchased from defendant, and the jury could only base its verdict on speculation and conjecture.

Plaintiff testified the schedule of watering and feeding the 137 head had not been changed on December 6 and 7 except as to feeding the corn from the elevator instead of corn which he himself had raised.

The weevil killer is a gaseous volatile substance which is presumed to evaporate within seventy-two hours. This was the only element entering into the circumstances of the case which was contrary to normal feeding routine.

Doctor Janson, the veterinarian, testified:

"Q. Doctor, from your examination then of the cattle, do you have an opinion as to what was the nature of the illness based both upon your examination and your observation of the cattle? A. Well as I recall the case I merely stated after getting the history of the feeding the corn I merely stated that the animal showed symptoms of poisoning and I suggested that they take one to Ames. Q. Is that your opinion from your observation that they did show symptoms of poisoning? A. They had symptoms of poisoning, yes."

Dr. A. H. Groth, veterinarian at the diagnostic laboratory at Iowa State College at Ames reported to Doctor Janson using the following language:

"The two calves owned by E. R. Doane, submitted on December 9, showed petechial ecchynotic hemorrhages on the

heart, erosions in the abomasum, hemorrhagic enteritis and passive congestion of the liver. * * * Feeding experiments conducted on a sample of the corn being fed the calves showed it to be nontoxic for laboratory animals. The lesions, history, and bacteriological findings are suggestive of a toxemia, the cause of which could not be determined."

These terms would not be understood by the jury, trial court nor this court, except for the fact that Dr. Sterling Barber, a veterinarian from Mason City, was called by plaintiff in rebuttal and analyzed the statement as follows:

"I have read Exhibit 1 [the report from Ames] * * *. The condition or conditions detailed in the paragraph are symptoms of poisoning. * * * If I received such a letter as Exhibit 1 in my practice of veterinary medicine I would treat the individuals for toxemia or poisoning."

Pertaining to the circumstantial evidence as to the feeding of the corn, appellant offered some contradictory testimony. The other wagonload of corn containing 122 bushels was returned to the elevator. The elevator repaid plaintiff the purchase price of all the corn. Thereafter, the elevator fed two steers from the returned corn without any damage to the steers. Appellant offered the testimony of four farmers who had purchased various quantities of the corn from the load returned, and who fed the corn to steers or hogs without any damage to them. In fact, they made normal gains upon the corn.

From all the circumstances involved in the case the jury could find that either prior to the delivery of the larger load of corn to plaintiff or between the time it was returned to defendant and fed by other farmers, the volatile gaseous substance which had been placed in the corn to kill weevils and other insects had evaporated and the poisoning effect had been eliminated. The jury could also find from the circumstances that a pocket of this weevil killer had become immeshed in the 17 bushels which were fed by plaintiff, and had not had time, as yet, to evaporate and become nonpoisonous. The jury could find that since the quart bottle of corn taken to Iowa State College was taken from the larger load the bottle did not contain any of the corn which had become contaminated.

█ The able trial court instructed carefully as to the nature and weight of circumstantial evidence. Evidence based on circumstances must be such that the result alleged is a probability rather than a possibility. Davis v. Van Camp Packing Co., 189 Iowa 775, 176 N.W. 382, 17 A. L. R. 649; 20 Am. Jur., Evidence, section 270; 31 C. J. S., Evidence, section 161.

31 C. J. S., supra, states: "* * * in some cases it has been held or stated that the facts introduced as circumstantial evidence must make highly probable, or point strongly in the direction of, the existence or nonexistence of the fact in issue. * * * if the inference sought to be drawn is more, or at least not less, probable than any other inference which might be drawn, although it has been held that facts are admissible only where they are consistent with the theory sought to be established and inconsistent with any other."

20 Am. Jur., supra, section 271, page 259, states: "* * * a fact [circumstantial] is admissible as a basis of an inference only where the desired inference is a probable or natural explanation of the fact and a more probable and natural one than other explanations, if any."

In Davis v. Van Camp Packing Co., supra, this court stated at page 797 of 189 Iowa: "In other words, the circumstances were such that it would be for the jury to determine which was the more reasonable probability."

In the same case, quoting from Dail v. Taylor, 151 N. C. 284, 66 S.E. 135, 28 L. R. A., N. S., 949, this court said (page 800): "The court held that negligence could be proved circumstantially, and that, if the facts proved establish the more reasonable probability of defendant's negligence, the case could not be withdrawn from the jury, though there might be a possibility of accident, arising under the evidence."

█ We hold there were sufficient circumstances shown by plaintiff that the jury was entitled to pass on the evidence of the two parties, pro and con, and decide the question of fact involved as to the cause of sickness and death of plaintiff's cattle. Davis v. Van Camp Packing Co., supra; Johnson v. Kanavos, 296 Mass. 373, 6 N.E.2d 434; Peckham v. Eastern States Farmers' Exchange, 134 F. Supp. 950; Brown v. Globe Laboratories, Inc., 165 Neb. 138, 84 N.W.2d 151; Haberer v. Moorman Mfg.

Co., 341 Ill. App. 521, 94 N.E.2d 611; Klassen v. Central Kansas Co-operative Creamery Assn., 160 Kan. 697, 165 P.2d 601.

Consideration of a few of above cited cases will be of value as to the question of submission of the case to the jury.

Referring again to Davis v. Van Camp Packing Co., supra, plaintiff's family had eaten a can of pork and beans produced by defendant. Some of the family ate the beans and some did not. One of the children ate nothing but the beans and died from ptomaine poisoning. The others who ate lesser amounts of the beans were sick. Those who ate no beans were not sick. In addition to discussing the medical evidence as to the eating of the beans, the proximate cause of illness, this court also said in the case at page 786 of 189 Iowa: "The circumstance that all those who ate the beans were made sick, while those who did not partake were not ill, is to our minds significant."

In the case at bar the 137 head of cattle in one feed lot all became sick. Forty head of cattle in another feed lot which had not partaken of the corn in question did not become sick. As in the Davis case this is significant.

In Peckham v. Eastern States Farmers' Exchange, supra, plaintiff lost fourteen cattle as a result of grain furnished by defendant. Although tests of both the carcasses and the grain proved negative, two different veterinarians called by plaintiffs testified the cows had been poisoned. The trial court instructed that plaintiffs had established by a fair preponderance of credible evidence that the grain was not wholesome and had caused the death of plaintiffs' cows. Here again eighteen cows and two bulls which had not been fed the grain did not become sick, but the others did. The court said at page 953 of 134 F. Supp.: "Here we see a sudden onset of a fatal illness striking the fourteen cows within a few hours following their consumption of the grain—an illness which the experts for both the plaintiffs and defendant agree was due to poisoning which caused the death of all fourteen within a few days."

In Haberer v. Moorman Mfg. Co., supra, defendant sold plaintiff some sheep worm medicine. The medicine was administered on July 17. Two days later they all became sick and continued in such condition until some died. Another group of one hundred five lambs became sick very quickly and were

in a toxic condition within a few hours after the medicine was administered. A man by the name of Mr. Ethridge had purchased part of a herd of four hundred sheep and plaintiff purchased the other part. With reference to the question of submitting the case to the jury the court said (page 526 of 341 Ill. App., page 613 of 94 N.E.2d):

"The evidence disclosed that the group of sheep, which included 400 in all, were divided purely by chance and not by any specific selection and simply by walking through the flock; and that the sheep which were taken by the plaintiff became ill after they were treated with the product of defendant company and those which were taken by the other buyer, George Ethridge, did not become ill. This circumstance could well have been considered by the jury in arriving at their verdict."

In Klassen v. Central Kansas Co-operative Creamery Assn., supra, plaintiff alleged that a stream or creek flowing through his property had become polluted through operations of defendant. His hogs and chickens died, after drinking the polluted water. Defendant alleged the allegation was too speculative and should not have been submitted to the jury. The court said (page 706 of 160 Kan., page 608 of 165 P.2d):

"Hogs and chickens do not die from drinking water unless there is something the matter with it. It is not necessary that there be a chemical analysis as to whether the water was polluted to make a case to go to the jury. There was ample evidence that the water in the stream was polluted. There was also evidence that the well water had the same general appearance as the water in the stream."

II. Appellant assigns as error the failure of the trial court to submit Requested Instruction No. III. Appellant contends it was error to permit the jury to consider any of the evidence offered with reference to the weevil killer and requested that the jury be given instructions not to consider such evidence.

There is no question but what the corn was fed and the cattle became sick and 21 died. It is a common and recognized fact that ordinary corn will not kill cattle. Even moist corn can be fed without any ill effects. It then became the purpose of veterinarians to make inquiry as to all possible circumstances which might be present aside from regular or even moist corn.

The manager of the elevator testified that weevil killer had been used in the elevator bins. He testified:

"As the grain came in and it appeared weevily to the employees they would applicate this weevil killer from the top of the silo onto the grain. Sometimes it would be done immediately after perhaps two or three loads had been brought in or perhaps the employee didn't get to it until later on in the day towards evening."

After eliminating all other elements involved in the situation it finally appeared that the only different and extraordinary treatment which had been used in connection with the corn was the weevil killer.

The real test in connection with withdrawal of certain issues from the jury is the question as to whether or not in a consideration of all instructions the jury has been correctly instructed. 88 C. J. S., Trial, section 313; Schulte v. Basler, Mo. App., 185 S.W.2d 320.

In 88 C. J. S., supra, at page 832, we find following statement: "Test of proper refusal of instruction. In determining whether a requested instruction withdrawing evidence from the jury's consideration was properly refused, the real test is, whether in the light of the entire charge the jury was fully and correctly instructed on all the material issues in the case."

The question in the case at bar is whether or not it was proper for the court to submit to the jury the evidence of Dr. H. A. Janson, Dr. A. H. Groth, Dr. R. E. Boxmeyer and Dr. Sterling Barber. Their evidence was in the nature of opinions as to the poisoning, which means as to the effect of the weevil killer. The jury was entitled to this evidence in connection with arriving at the facts of the case.

The admission of opinion evidence rests largely in the sound discretion of the court. Grismore v. Consolidated Products Co., 232 Iowa 328, 5 N.W.2d 646; Waterloo Sav. Bk. v. Waterloo, C. F. & N. R., 244 Iowa 1364, 60 N.W.2d 572; Brower v. Quick, 249 Iowa 569, 578, 88 N.W.2d 120, 125.

In Brower v. Quick, supra, we said: "It is well settled in Iowa that if a witness is possessed of special training, experience, or knowledge in respect to the matter under investigation,

and if his opinion based on evidentiary facts will be of aid to the jury in reaching a correct conclusion, and if the opinion expressed does not bind the jury to accept it, but leaves the ultimate conclusion to be determined by the judgment of the jurors themselves, such testimony is not improper nor prejudicial."

In 20 Am. Jur., Evidence, section 271, page 259, we also find: "No evidence should be excluded of any fact or circumstance connected with the principal transaction in dispute from which an inference as to the truth of a disputed fact can reasonably be made."

The trial court did not commit error in submitting the evidence as to the weevil killer, under the proper precautionary instructions which were given by the court.

III. Appellant assigns as error the refusal of the court to instruct in accordance with defendant's Requested Instruction No. IV. Appellant alleges all testimony with reference to depreciation in value of any cattle not dead, after the occurrence involved, should have been withdrawn from the jury.

The testimony with reference to this phase of the case is not speculation nor conjecture. Six of the cattle which had been fed the corn in question were stunted in their growth. When the 122 cattle were marketed, about a year after the elevator corn episode, six cattle weighed only six hundred pounds. The other 116 cattle weighed nine hundred twenty-five pounds. At the time of commencement of the feeding, all cattle were generally similar in weight and appearance.

The fundamental principle of damages is to restore the injured party to the original position occupied by such party, prior to the tort, either through restoration of property, if possible, or through measurement of the damage in money value. Swift & Co. v. Redhead, 147 Iowa 94, 122 N.W. 140; 15 Am. Jur., Damages, section 42; 25 C. J. S., Damages, sections 80, 83; Brower v. Quick, supra.

25 C. J. S., Damages, section 80, states: "In tort actions the measure of damages is that which will afford compensation to the injured person." Section 83: "As a general rule the measure of damages for the loss or destruction of personal property is its reasonable value at the time of loss."

In case of Swift & Co. v. Redhead, supra, plaintiff sued defendant for balance due on eight tons of blood meal of $383.52. That defendant counterclaimed for $1615, alleging the blood meal had caused his cattle to sicken and suffer from scours, with the result that it retarded growth. Defendant's contention was that the blood meal had proven valueless and that he was entitled to recover the damages caused by feeding the same, measured as difference in the market value of the cattle at the end of sixty days feeding thereof and the value of such cattle if the food had not been given to them. The jury found for defendant on his counterclaim. This court sustained the theory of damages as to the cattle. It is true the verdict was reduced to $1 for the reason that after defendant noticed and realized that the blood meal was causing damage to the cattle he failed to stop using the meal.

The case is similar to the case at bar as to the basic theory of right of plaintiff to have the question of damages, arising from sick and stunted cattle, submitted to the jury:

In the Redhead case we said at page 101 of 147 Iowa, page 142 of 122 N.W: "What he [Redhead] is demanding is the loss of profits which would have accrued from feeding in the ordinary way, but for the consumption of the blood meal; that is for the injury occasioned by feeding an article not as warranted. Appellant contends that the damages, if any, are too uncertain and speculative for adjudication. Such is not the holding of the courts where injury has resulted from the use of an article warranted to be beneficial. As said, the claim is not for profits lost, but for damages due to the *interference with the growth of the animals.*" (Emphasis ours.)

■   While plaintiff had sued for $3780 damage, the court in Instruction No. I instructed the jury that the maximum limit of plaintiff's recovery with reference to the 21 cattle which had died should be $1575, and that the limit of recovery as to the sickening of the 116 head of cattle should be $435, or a total of $2010. The jury returned a general verdict of $1365.

In fact, the verdict of the jury is such that it is not too important as to whether or not the court instructed the jury on the question of deterioration in value as to the cattle that were fed out. In the testimony plaintiff testified the value of the

21 cattle at time of death was $1575. There was no testimony by any other witness to the contrary. The jury's verdict is less than the uncontradicted testimony as to the value of the dead cattle.

We can reasonably assume that when the court limited the recovery as to any sickening of cattle, his analysis, in fact, pertained to the six cattle which were stunted and which had lost a total of approximately two thousand pounds as compared with the other cattle. The sale price of the cattle when marketed was twenty-one cents per pound. The jury actually made no allowance for the stunted or sick cattle in its verdict. At any rate, the refusal to submit defendant's Requested Instruction No. IV was not prejudicial error.

We hold the case was properly submitted to the jury under comprehensive and fair instructions, and the court properly rejected the two requested instructions. The case is affirmed.— Affirmed.

THOMPSON, C. J., and GARFIELD, GARRETT, HAYS, LARSON, and OLIVER, JJ., concur.

BLISS and THORNTON, JJ., take no part.