RALSTON PURINA CO., Appellant v. JUNGERS et al.,
Respondents

(199 N.W.2d 600)

(File No. 10966. Opinion filed July 26, 1972)

584

**Loucks, Oviatt, Bradshaw & Green,** Watertown, for plaintiff and appellant.

**Davenport, Evans, Hurwitz & Smith** by **Lawrence L. Piersol,** Sioux Falls, for defendants and respondents.

HANSON, Presiding Judge.

The Ralston Purina Company brought this action to recover $6,311.97 on a promissory note executed by defendants, Francis H. Jungers and Irma Jungers, on January 10, 1967. Plaintiff alleged the promissory note represented the balance due for feed furnished defendants in accordance with a cattle feeding contract. Defendants answered and counterclaimed for damages in the amount of $12,000 because of failure of consideration, false representations, negligence, and breach of warranty. Plaintiff's motion for a directed verdict was denied and the issues submitted to the jury which returned a verdict for defendants in the amount of $5,688.03. Plaintiff's subsequent motion for a new trial was denied, however the court ordered a new trial unless defendants consented to a reduction of the judgment to $4,742.16. Defendants con-

sented to the reduction, but the Purina Company refused the remission. A supplemental judgment in the amount of $5,800.73 was then entered from which plaintiff appeals.[1]

There are sharp conflicts in portions of the evidence, all of which the jury apparently resolved in favor of defendants. Viewing the evidence in this light it appears the Jungers are husband and wife who own and operate a farm near Watertown, South Dakota. Their farming operations consist of raising small grain, corn, and livestock. Mr. Jungers has farmed for approximately 35 years and has had considerable experience raising and feeding cattle. The Ralston Purina Company is a manufacturer or producer of livestock feeds.

In 1965 Jungers purchased 180 head of feeder calves. They were all health inspected and vaccinated for anthrax. The cattle were wintered and fed together on silage. In the spring of 1966 Jungers separated approximately 90 head of his cattle for sale as he was getting low on feed. The remainder of the herd was put out to pasture.

Sometime in May 1966, Darrell K. Berglin, a district sales supervisor for the Ralston Purina Company called on Jungers for the purpose of selling a feeding program. Berglin inspected Junger's feeding facilities which appeared adequate and the cattle which appeared healthy. Jungers was told Ralston Purina had a Complete Chow ration available which would enable him to feed out his cattle without additional roughage or feed. He was further advised it would take 140,000 pounds of complete ration to finish feeding out the cattle to the desired market weight of 1050 pounds. Berglin also estimated the cattle would gain at least three pounds per day on the complete ration at a cost of 16½ to 17 cents per pound. Relying on such representations the Jungers signed a Ralston Purina chow contract providing for 140,000 pounds of complete cattle chow at $62.40 per ton, 200 wormers at $50.00 per hundred, and mineral at $6.30 for a total price of $4,515.25.

---

1. See Ives v. Swift & Company, Iowa, 183 N.W.2d 172, for propriety of reinstating of original amount of judgment when remittitur refused.

Jungers started feeding the Purina chow to the 87 head of cattle in the feed lot on May 20, 1966. At the time the average weight of the cattle was 668 pounds. The feed was supplemented by the 12 or 15 ton of silage remaining in the silo which lasted a week or 10 days. By the middle of August Jungers was in need of more feed as the cattle were not up to market weight. Additional Complete Cattle Chow was then contracted for at a higher per ton cost than the original contract price.

On October 12, 1966, 29 head of the cattle were sold to the Swift Packing Plant in Watertown. Two of the cattle were sold to local persons and one was butchered by the Jungers. The remaining 54 head were sold to the Spencer Packing Plant in Iowa on November 2, 1966. Their average weight was 1,018 pounds. The Jungers received a total of $20,629.86 for all the cattle which had been on the Complete Chow feeding program.

Instead of 140,000 pounds of Complete Chow to finish feeding the cattle 312,429 pounds were required. Instead of $4,515.25 originally contracted for, the total cost of the feeding program was $10,232.79. The cost of gain per pound was 32 cents instead of 16½ to 17 cents as represented.

In November and December 1966 the Jungers paid $4,022.19 to the Ralston Company on the feed contract and on January 10, 1967 they executed the promissory note sued upon for the balance of the account in the amount of $6,311.97. No payments on the note were ever made.

The pouches and livers of all the 54 head of cattle sold to the Spencer Packing Plant were condemned by inspectors of the United States Department of Agriculture. The pouch or rumen is the first of four stomach sections of a cow. According to Dr. W. E. Poley, a biochemist and nutrition expert, who testified for defendants, the 100 percent condemnation of livers and pouches in the cattle sold to the Spencer Packing Plant was caused by the Purina Company's Complete Cattle Chow. In explanation of his opinion Dr. Poley testified additional unground roughage should be fed with Complete Chow because finely ground roughage in the feed does not perform the necessary function of coarse

roughage in cattle stomachs. Therefore this type of Complete Cattle Chow results in a very high incidence of abscessed livers and rumenitis. Ordinarily there should not be more than a 0 to 5 percent condemnation rate if an adequate amount of additional roughage is fed with the concentrated rations. According to Dr. Poley, cattle with abscessed stomachs will not gain weight as rapidly as healthy animals. There was also evidence the Purina Company was aware of research which indicated danger in fattening cattle with a highly concentrated ration without supplementary roughage such as hay and corn cobs.

■  There is no question defendants executed the promissory note sued upon. The note itself imports consideration and defendants were charged with the burden of proving lack of consideration. SDCL 53-6-3 and 53-6-4. This burden was not sustained. The undisputed evidence shows that all the feed contracted for was delivered by the Ralston Purina Company to defendants' farm. The chow was all fed to and consumed by defendants' cattle. All of the cattle gained considerable weight. Such evidence will not sustain a finding of total lack of consideration. "A partial failure of consideration does not excuse performance by the other party to a contract or give him a right of rescission. Such failure is merely ground for abatement of damages unless it goes to the root of the contract." United States v. Schaeffer, 9 Cir., 319 F.2d 907. Under the circumstances, plaintiff's motion for a directed verdict in the amount of the note should have been granted subject to be offset or applied pro tanto to damages, if any, sustained by defendants. 17 Am.Jur.2d, Contracts, § 398, p. 844.

It is impossible to determine from the general verdict which of the alternate defensive claims alleged in the counterclaim was relied upon by the jury in awarding defendants the sum of $5,-688.03 damages.

■  There is sufficient evidence to show defendants' cattle were all healthy when defendants commenced feeding Ralston Purina Complete Cattle Chow. The chow was represented to be a complete feed not needing supplementary feed or roughage. The cost of gain was represented to be 16½ to 17 cents per pound

whereas the actual cost of gain was in excess of 32 cents per pound. The Jungers relied upon such representations. The cattle were fed according to directions and in the manner intended. The evidence furthermore shows more than a mere "possibility" the feed caused the abscessed condition in the cattle. A "probable" causal relationship between the cause and effect was established sufficient to sustain a recovery of damages for breach of warranty of quality or fitness. Green v. Ralston Purina Company, Mo., 376 S.W.2d 119; Texsun Feedyards, Inc. v. Ralston Purina Company, D.C.Tex., 311 F.Supp. 644; Western Feed Company v. Heidloff, 230 Or. 324, 370 P.2d 612; Swift & Company v. Redhead, 147 Iowa 94, 122 N.W. 140, and Doane v. Farmers Cooperative Company, 250 Iowa 390, 94 N.W.2d 115. See also Ralston Purina Company v. Edmunds, 4 Cir., 241 F.2d 164, and Thomas v. Kasco Mills, Inc., 4 Cir., 218 F.2d 256. It is unnecessary therefore to consider at length other alternative grounds of recovery the jury may have relied upon to reach its verdict.

Plaintiff sought to recover $6,311.97 on its promissory note. As we have indicated it was entitled to a directed verdict in this amount. Defendants, on the other hand, counterclaimed for damages in the amount of $12,000. The jury returned a verdict for defendants for the sum of $5,688.03 which is the exact difference between the two prayers for relief. The only rational explanation is the jury found for plaintiff on its promissory note and for defendants for the full amount of damages claimed in the counterclaim and awarded defendants the difference between the two amounts.

■ The object of compensatory damages is to make the injured party whole. In the absence of punitive damages, one injured by a breach of a contract is entitled to just and adequate compensation for his injury, but no more. 22 Am.Jur.2d, Damages, § 13, p. 29. In the present action, defendants purchased feed, mineral, and other products from plaintiff in the amount of $10,-232.79. The feed was all consumed by defendants' cattle which gained on the average between 2 to 2½ pounds a day from a starting weight of approximately 700 pounds to a finished weight of 1,018 pounds. The cattle were sold for $20,629.86. The verdict awarded by the jury would entitle defendants to the profit from

the sale of cattle in the amount of $10,397.07, the unpaid balance due plaintiff for cattle feed in the amount of $6,311.97, and the verdict for damages in the amount of $5,688.03, for a total of $22,-397.07 from feeding one half of his herd of cattle for one year.

■ Viewing the evidence relating to damages in a light most charitable to defendants, the verdict awarded by the jury is unrealistic, excessive, and unsupported. As such, it must be considered to be the product of passion, prejudice, or mistake. Although other elements of damage are suggested the only detriment suffered by defendants and sustained by the evidence is the difference between the estimated cost of gain per pound and the actual cost or the difference between the estimated cost of feed to finish out the cattle in the amount of $4,515.25 and the actual cost of $10,232.79.

The judgment appealed from is accordingly vacated and the action remanded with instructions to direct a verdict for plaintiff in the amount of $6,311.97 subject to be offset or applied pro tanto to whatever damages may be awarded defendants on their counterclaim, and the retrial shall be limited to the issue of such damages only. No costs shall be allowed either party.

All the Judges concur.