ELLIOTT N. BROWER, appellant, v. MAE CAMERER QUICK, administratrix of estate of Mabel Bernice Quick, appellee.

No. 49347.

(Reported in 88 N.W.2d 120)

570

Fᴇʙʀᴜᴀʀʏ 11, 1958.

Mick, Miller & Murphy, of Knoxville, and Watson & Herrick, of Indianola, for appellant.

J. W. Ritchie, of Indianola, and Carroll Johnson, of Knoxville, for appellee.

Lᴀʀsᴏɴ, J.—To plaintiff's action at law for damages resulting from a head-on automobile collision, defendant filed a general denial and a counterclaim. The jury returned a verdict

against plaintiff for the wrongful death of defendant's decedent. He assigns as error the trial court's refusal to direct a verdict for him on the counterclaim, admission of certain testimony during the trial, and failure to give sufficient or required instructions to the jury. The issues necessitate a rather extensive review of the facts and testimony introduced by each party.

At the place where the collision took place, Highway No. 60 runs somewhat southeasterly from Des Moines. Westward it was fairly level with perhaps a slight rise. Easterly it was level a short distance and then dropped down over a hill some three quarters of a mile to the South River bridge. About a mile farther in this river valley it crossed the Coal Creek bridge and continued on toward Knoxville. The accident happened sometime between 8 and 8:30 a.m. on June 21, 1956. The weather was fair and the highway dry and smooth. The plaintiff, Elliott N. Brower, a resident of Knoxville, operated a garbage collection business there during the daytime. He also worked nights at the Black Leaf Chemical Company in Des Moines from 8 p.m. until 7 a.m. On the night shift before the morning of this accident plaintiff had worked in the "dry section" of the company running an automatic machine bagging an odorous fertilizer called hexachloride. After finishing work plaintiff took a shower, as required by the company, ate breakfast, and started for Knoxville. He was driving a 1951 dark two-tone Buick sedan with a light cream top and a 63 county license plate. At a point approximately a mile and a half west of the scene of the accident, a truck driver testified, over objections by plaintiff, that he had met a gray Buick bearing a 63 license plate between 8:10 a.m. and 8:20 a.m. As the trucker drove toward Des Moines this Buick came around a curve toward him in the left lane and forced him upon the dirt shoulder to avoid a collision. On his return trip a short time later he said he recognized the Buick as the one involved in this accident. A shoe salesman, Robert Daniels, on the other hand testified he had been following plaintiff for some four miles and that he appeared to be driving in his own lane at about 50 to 55 miles per hour right up to the time of the collision. This witness testified he was between a quarter and a half mile behind plaintiff when the accident occurred, but

he did not disclose to anyone that he had seen the collision until he stopped at a store in Knoxville later in the day.

Defendant's decedent, Mabel Bernice Quick, left her mother's farm home in Marion County that morning to go to work in a beauty studio in Des Moines. She was driving alone in her 1955 Chevrolet sedan and had just passed a car driven westward by a witness, Nick Ver Steeg. He said she was driving about 60 miles per hour and, after passing him, returned to her right lane and disappeared over the rise west of the South River bridge. When the Ver Steeg car came over the rise the accident had just occurred and Ver Steeg and his wife took over the task of directing traffic while a son went to summon aid. They testified that they. did not see the car of Robert Daniels approach from the west. In fact, they said no car approached from the west for some time after the collision. Plaintiff's theory of the accident depends upon the eyewitness testimony of himself and his witness Daniels, who testified he saw both cars for "a minute or 30 seconds" (obviously inaccurate) before they collided, and upon the physical facts evident. after the collision.

Plaintiff testified he was driving on his own side of the highway. He said he observed Miss Quick's car when it first came over the crest of the hill in the left lane, and estimated their distance apart at 350 to 400 feet. He estimated her speed at about ten miles per hour faster than he was driving and said she stayed in that lane until they collided. He testified that at the last moment he swerved to the left side of the road in an attempt to avoid the collision, and applied his brakes. His statement to Ver Steeg immediately after the accident was that "I was in a tail spin." Miss Quick died without a statement, and thus her case is based largely upon circumstantial evidence. ·

In response to the call by Ver Steeg, a state patrolman arrived at the scene in about thirty minutes and the sheriff some fifteen minutes later. They took charge and dispatched the injured persons to the hospital, directed traffic, and made observations and measurements as to skid marks and vehicle positions. They testified there was a skid mark approximately 41 feet in length extending east of the Quick car. They also testified as to clear skid marks made by four tires, ending under the Buick. The mark made by the right wheel at the time of the

impact was one foot and nine inches to the right of the center line; at 40 feet westward it was six inches to the left of the center line; and at 50 feet westward the right-hand tire mark was one foot and three inches to the left of the center line. Thus the course of these marks made by the Buick was clearly from the left lane toward the right lane for the last 50 feet preceding the collision. In testifying as to the discernible mark east of the wreckage, the patrolman stated:

"This skid mark ends approximately 18 feet back from the point of impact at a point approximately two feet 9 inches to the right of the center line or to the north of the center line. I define the point of the impact as where the two front ends of the two cars came together. The approximate length of the Quick Chevrolet is in the neighborhood of 16 feet. * * * The right rear wheel of the Quick car at the time I saw it was approximately * * * six inches from the center line on the left-hand side, or the south side of the center line."

Exhibits 9 and 12 clearly support the theory that the cars came to rest with their front ends together near the center of the highway, with both rear ends *off to the left of the skid marks* on the pavement.

Plaintiff's motion for a directed verdict against defendant on her counterclaim was overruled, and the issues of negligence alleged by each and the question of freedom from contributory negligence required were submitted to the jury. A verdict was returned for defendant in the sum of $17,500. The court overruled plaintiff's motion for a new trial and rendered judgment for defendant in the above sum. Plaintiff appealed.

· I. Plaintiff contends that the court erred in overruling his motion for a directed verdict, his motion for a new trial, and his motion for judgment notwithstanding the verdict, for the reason that defendant's circumstantial evidence based largely on physical facts was unsatisfactory and inconclusive. He says defendant has failed to establish by competent and material evidence that the proximate cause of the collision was plaintiff's negligence or that she was free from contributory negligence. Thus the basic question before us is whether the competent evidence

relating to the physical facts was sufficient to make fact issues for the jury.

We are firmly committed to the rule that to recover one need not prove his theory of causation by evidence so clear as to exclude every other possible theory. The evidence must be such as to make his theory reasonably probable, not merely possible, and more probable than any other hypothesis based on such evidence. Smith v. Darling & Co., 244 Iowa 133, 136, 56 N.W.2d 47, 49; Latham v. Des Moines Electric Light Co., 229 Iowa 1199, 1207, 296 N.W. 372, 375; Bokhoven v. Hull, 247 Iowa 604, 607, 75 N.W.2d 225, 227, and cases cited therein; Turner v. Hansen, 247 Iowa 669, 677, 75 N.W.2d 341, 345; Soreide v. Vilas & Co., 247 Iowa 1139, 1143, 78 N.W.2d 41, and citations. This means only that the competent and material evidence must be such as to raise a jury question within the limits of the foregoing rule; it need not be conclusive. Hackman v. Beckwith, 245 Iowa 791, 795, 64 N.W.2d 275; Hayes v. Stunkard, 233 Iowa 582, 588, 10 N.W.2d 19. In Weilbrenner v. Owens, 246 Iowa 580, 582, 68 N.W.2d 293, 294, we recognized the rule that in considering the defense contention that the testimony was insufficient for the jury, we must view it in the light most favorable to complainant. This rule is also referred to in Hackman v. Beckwith and Soreide v. Vilas & Co., both supra. Ordinarily the issue of freedom from contributory negligence is one for the jury and becomes one of law for the court only in the exceptional case where plaintiff's want of reasonable care is so manifest and flagrant as to convince all fair minds plaintiff did not exercise the caution for his own safety which marks the conduct of an ordinarily prudent man. Tucker v. Tolerton & Warfield Co., 249 Iowa 405, 409, 86 N.W.2d 822, 825.

Plaintiff's evidence that the Quick car was in the wrong or south lane from the time he first observed it and that it did not change direction is countered by the Ver Steeg testimony that Miss Quick drove over the crest of the hill in her own or right lane, and the tire mark in the north lane, if hers, indicates that she did not change her course to the left lane in that short distance. Defendant contends the skid mark sufficiently confirms that position and she supports the inference that the rear of the Quick car did bounce into the left lane a few feet beyond the

end of the skid mark, by the testimony of a state highway patrolman of long experience. He testified, over objections, that if these cars collided at a certain angle at a certain speed, the shift or bounce of the Chevrolet from the north lane would possibly be such as to result in the position in which the cars were found when they came to rest. The officer's opinion was admitted as an aid to the jury in its determination of whether this east skid mark was that of the Chevrolet.

We are satisfied plaintiff's contention, that the identity of the east tire mark is too uncertain and therefore not sufficient to make a jury question, is without merit. There can be little or no doubt but what the skid marks of the Buick to the west leading up to the resting place of the automobile were made by it and disclosed its location and direction of movement prior to the collision. The place of collision in relation to a north-and-south line running across the pavement was established by the photos and the testimony of the officers. The place of contact in relation to the highway center line is in issue. We learn from the testimony and the photo exhibits that the point of impact on the vehicles was the right front of the Chevrolet and the right front to center of the Buick. In other words, it was a slightly off-center contact which sent the vehicles in a swing to their left. Exhibit 9 indicates a Buick shift of about a half car width, while if the Chevrolet's back end was to be connected to the end of the skid marks on the right or north lane, as indicated on Exhibit 12, its left shift would be several feet. Considering such a shift or bounce possible, the inference that the Quick car was in its right or proper lane when the collision occurred would not be so unreasonable that the jury might not find that the plaintiff's actions were the sole proximate cause of the crash and that defendant was free from contributory negligence in the matter. The jury need not and evidently did not believe the plaintiff's explanation of his presence in the north lane as an effort to avoid defendant in the left lane, nor his testimony supported by his witness Daniels that the Quick car was in the wrong lane at all times. It was unexplained why plaintiff was attempting to return to the south or right lane when he had testified defendant never

changed her course in that lane. We conclude that if the facts as testified to by the officers, plus the testimony of Ver Steeg that the Quick car returned to the right lane after passing him just before the collision, are viewed in a light most favorable to defendant, it would quite reasonably give rise to the fair inference that she was in her proper lane when struck. The issue was for the jury. Soreide v. Vilas & Co., supra, and cases cited.

The general rule, of course, is that testimony or evidence as to tire or skid marks in the vicinity of the accident is admissible, that is, to the extent of allowing the witness to describe the marks and the circumstances under which he observed them, leaving it to the jury to draw its own opinion and conclusion as to what, if anything, the evidence indicates or tends to prove. Annotations 23 A.L.R.2d 115; Ward v. Zerzanek, 227 Iowa 918, 924, 289 N.W. 443; Brady v. McQuown, 241 Iowa 34, 40 N.W.2d 25; Thornbury v. Maley, 242 Iowa 70, 77, 45 N.W.2d 576, and cases cited.

II. The patrolman was permitted to answer two similar hypothetical questions which were designed to obtain the officer's opinion as to how the Quick car might react after such an impact as appeared herein.

The receipt of opinion evidence, lay or expert, rests largely in the sound discretion of the trial court. Waterloo Sav. Bk. v. Waterloo, C. F. & N. R., 244 Iowa 1364, 1374, 60 N.W.2d 572, and cases cited. Also see, for a complete discussion of the law and authorities on such opinion evidence, Grismore v. Consolidated Products Co., 232 Iowa 328, 342, 5 N.W.2d 646, 654.

It is true generally that an opinion is not to be received upon an ultimate issue of fact if the jury is itself equally qualified to pass upon such an issue. McKeever v. Batcheler, 219 Iowa 93, 97, 257 N.W. 567; Danner v. Walters, 154 Neb. 506, 48 N.W.2d 635. However, considerable leeway is allowed in this field of evidence for the reason that no matter how the opinion question is phrased or formulated, it remains an opinion which the jury is at liberty to reject. Therefore, only in clear cases of abuse would an admission of such evidence be found prejudicial. Such does not appear in the case before us.

■ It is well settled in Iowa that if a witness is possessed of special training, experience, or knowledge in respect to the matter under investigation, and if his opinion based on evidentiary facts will be of aid to the jury in reaching a correct conclusion, and if the opinion expressed does not bind the jury to accept it, but leaves the ultimate conclusion to be determined by the judgment of the jurors themselves, such testimony is not improper nor prejudicial. Hackman v. Beckwith, Grismore v. Consolidated Products Co., Waterloo Sav. Bk. v. Waterloo, C. F. & N. R., and Brady v. McQuown, all supra.

■ This officer testified he had investigated some 150 vehicle accidents per year for over 14 years and knew how vehicles would tend to react under given conditions of that nature. He was asked: "* * * Let us assume that the Brower car was traveling from Des Moines toward Knoxville at a speed in the vicinity of 45 to 55 miles per hour, and was going in the direction of these skid marks [Exhibit B] * * * which extended to the Des Moines side of the accident, and assuming that the Quick car was coming from the Knoxville direction, and that the skid mark about which you have testified lay to the Knoxville end of the point of impact, truly indicates the course of the right-hand side of the Quick car as it approached the point of impact, and assuming that the Quick car was traveling at a speed perhaps ten miles an hour in excess of the speed of the Brower car, and assuming that the point of impact was between the right front corner of the Quick car and approximately the center, or a little to the south of the center of the Buick car, what could you reasonably expect would have been the movement of the rear wheels of the Quick car, or the movement of the rear end of the Quick car, immediately following the impact?"

Plaintiff objected "* * * for the reason that * * * it calls for a mere opinion and conclusion on a matter that is not a subject of expert testimony. The witness has not been qualified; no proper foundation has been laid and it would invade the province of the jury." The objections were overruled and the witness answered: "It would be the natural tendency for the rear end of the Quick car to be thrown around to the south,

or to the left of the center line." Plaintiff's motion to strike for the aforestated reasons and that "it now appears it is a conclusion of the witness and a matter for the jury to determine" was also overruled.

The officer was later asked: "Mr. VanderLinden, based on your extensive experience, what is your opinion as to whether or not, under the circumstances which I outlined in my hypothetical question a moment ago, the rear end of the Quick car could, as a result of the impact between the two cars, have bounced over to the south from the Knoxville end of this east skid mark shown on Exhibit B to the point * * * where the right rear wheel of the Quick automobile is shown to have come to rest?" The objection to the witness's qualifications, as calling for an answer which would invade the province of the jury, too speculative, and as not being the subject of expert testimony, was overruled and the witness stated: "It could have." A motion to strike was overruled.

That testimony is in substance the basis of plaintiff's contention that the trial court committed reversible error in permitting jury consideration of such an opinion. We find no merit in this contention. It was properly left to the jury to determine from the testimony where the point of impact on each vehicle occurred, the speed of the cars, and whether the tire marks behind each automobile were made by that car, as well as to what, if anything, they tended to prove.

Clearly the Ver Steeg testimony and the east tire mark, if connected to the defendant's automobile, would support an inference that the Quick automobile was traveling in the north lane prior to the collision. The explanation of this physical evidence, defendant contends, was a proper subject of expert or opinion testimony, and we must agree.

The witnesses had described the marks observed, without objections, the speed of the cars, and the apparent point of contact on each vehicle. It is not disputed that the inference to be drawn from that testimony as to the position of the cars before the collision is solely in the province of the jury. Thornbury v. Maley and Ward v. Zerzanek, both supra. But to aid the jury in drawing a proper inference from facts that are not

obvious is not only permitted but desirable. Hackman v. Beckwith, supra, 245 Iowa 791, 804, 805, 64 N.W.2d 275.

This was not an attempt to usurp the function of the jury in its task to determine the ultimate fact as to where the collision occurred, but to aid it to interpret the facts related. It was a circumstance in which such aid might be helpful but not compelling as a conclusion. We need not again review all the authorities cited in the Grismore v. Consolidated Products Co. case, but reaffirm the statement on page 361 of 232 Iowa, page 663 of 5 N.W.2d, which says: "* * * we think there can no longer be any question of the soundness of the rule that if the matter before the tribunal for determination is one in which opinion testimony, either lay or expert, is necessary or proper, the witness may express his opinion either as to the possibility, probability, or actuality of the matter of fact about which he is interrogated, and the answer will not be an invasion or usurpation of the province or function of the jury, even though it passes upon an ultimate fact which the jury must determine."

We have examined the Nebraska case of Danner v. Walters, supra, 154 Neb. 506, 48 N.W.2d 635, cited by plaintiff, and do not find the decision therein in conflict with our pronouncements nor of aid in this case. In the Danner case there was no issue from the physical facts related that called for the opinion of an expert. The court correctly found there that the jury, under those facts, was as competent as the witness to decide the issue. We ourselves have said the same thing, under like circumstances, in McKeever v. Batcheler, supra, 219 Iowa 93, 97, 257 N.W. 567, 569, concluding: "These witnesses were no better qualified to give an opinion as to the identity of these tracks than the jurors themselves." But such is not the case before us now, for the opinion solicited here did not relate to the identity of the tire marks, but as to the possibility of the Quick car's bouncing from the visible mark to the place where it came to rest. It involved a question upon which, by his experience, the patrolman seemed well qualified to aid the jury to interpret the factual evidence related. Thornbury v. Maley, and cases cited, Hayes v. Stunkard and Soreide v. Vilas & Co., all supra; 20 Am. Jur., Evidence, section 782, page 653, and cases cited

under note 16 thereof. We hold that the trial court did not abuse its discretion in admitting this testimony.

 III. Plaintiff further contends the trial court erred in admitting the testimony of the trucker, Walter F. Smith, who told of being run off the highway about a mile and a half from the scene of this collision a few minutes earlier. He contends there was insufficient identification of plaintiff's automobile and that the testimony related was too remote to have any bearing upon plaintiff's alleged negligence in this case.

 We have considered this matter in many recent decisions, a few of which are: Anderson v. Elliott, 244 Iowa 670, 680, 57 N.W.2d 792, and authorities cited; State v. Hill, 239 Iowa 675, 680, 32 N.W.2d 398, and cases cited. Usually the question relates to excessive speed at some distance from the mishap. The rule, however, is quite clear. Types of conduct which may change quickly are usually excluded as of little independent value as proof of the same conduct at a different time and place. Other types of conduct or their causes are apt to continue for a substantial time, so that evidence that there was such conduct at a certain time and place carries a likelihood that the same conduct continues over one or more miles and over one or more minutes from the time and place the conduct was observed. The question of whether such evidence is too remote depends upon the causal connection in each particular case, and its acceptance rests largely in the sound discretion of the trial court. Anderson v. Elliott, supra; Tobin v. Van Orsdol, 241 Iowa 1331, 45 N.W.2d 239; Neyens v. Gehl, 235 Iowa 115, 15 N.W.2d 888; Roushar v. Dixon, 231 Iowa 993, 2 N.W.2d 660; Comins v. Scrivener, 10 Cir., 214 F.2d 810, 46 A. L. R.2d 1 and annotation, pages 13–16; Bryant v. Brown, 278 Mich. 686, 271 N.W. 566. While it may well be that speed and position on the highway could change considerably in a mile and a half, here there is more than mere position and speed. It is true there was no testimony as to plaintiff's actual drowsiness, and he said he was alert, but there were also many facts related from which a contra inference could be drawn. Brower had worked long hours, within the hour had a bath and a breakfast, and was driving into a warm spring sun. He had been working a day job in Knoxville and a night job in Des

Moines. The jury might well find under these circumstances that he was overtired, exhausted, and dozed at the wheel, that he did not see the trucker with whom he almost collided on the wrong side of the road a mile and a half westward, and that this conduct or condition did continue until the fatal accident occurred. If this condition were found to exist, its continuation would be most probable.

There was also sufficient identification of the Buick car, we think, to permit jury consideration of that issue, and so we find no abuse of the trial court's discretion in admitting this evidence into the record.

IV. Plaintiff further contends the trial court erred in overruling his objections to testimony showing gifts by decedent to members of her family, and also financial aid needed and rendered to her parents, brothers and sisters during the past several years. Defendant contends such evidence was offered for the purpose of establishing decedent's character and industry, and to explain a lack of her visible accumulations although she was 27 years of age and unmarried. Under our past decisions damages in such cases must be determined by the present worth or value of that which the decedent would reasonably be expected to save and accumulate if she had lived out the natural term of her life. We have said it is proper to consider her age, health, education, talents, her present as well as past employments, and her revenue-producing prospects, character and habits.

In DeToskey v. Ruan Transport Corp., 241 Iowa 45, 48, 40 N.W.2d 4, 17 A.L.R.2d 826, 830, we said: "In each case where a death has occurred and the amount of the verdict is the matter to be determined, the jury and the court can and should take into consideration the life expectancy of the decedent and other facts which will vary in individual cases including the decedent's character, health, *habits*, talents, prospects, *contributions to dependents*, and other facts and circumstances upon which juries may have differences of opinions", citing cases. (Emphasis supplied.)

In the leading case of Nicoll v. Sweet, 163 Iowa 683, 688, 144 N.W. 615, 617, L. R. A. 1918C 1099, Ann. Cas. 1916C 661, it is stated: "Fairness to the beneficiaries of the estate on the

one hand and of the defendant on the other requires that the jury be put in possession of all the facts having the slightest legitimate bearing upon this intricate problem."

 While the trial court permitted questions regarding the family health and needs, which standing by themselves may seem irrelevant and immaterial, they were accepted as background for justified expenditures of decedent's savings and a credit to her generous and just character. We do not share plaintiff's belief that they were inserted to gain sympathy and inculcate prejudice. The other evidence clearly shows decedent was an industrious, ambitious and energetic person who had won honors in schools and advanced swiftly in her undertakings. Other cases holding that contributions made by a decedent to just and worthy causes are proper for jury consideration are Spaulding v. Chicago, St. P & K. C. Ry. Co., 98 Iowa 205, 67 N.W. 227, and Hanna v. Central States Elec. Co., 210 Iowa 864, 232 N.W. 421.

Considerable discretion is permitted the trial court in admitting such testimony, and only where it allows the testimony to get out of hand or degenerate into a trial of irrelevant and highly prejudicial matters will this court reverse for admitting immaterial matter into the record. That such things sometimes happen is illustrated in Evans v. Holsinger, 242 Iowa 990, 48 N.W.2d 250, 28 A. L. R.2d 1434, relied upon by plaintiff, where the objectionable testimony and its whole tone was inexcusable and irrelevant to any issue to be determined in the case. But such is not the case at bar. We are satisfied here that the brief inquiry as to the health and welfare of members of the family, explaining a need for decedent's past aid, was not so far afield as to amount to prejudicial error.

 V. Finally, plaintiff now complains because the court did not instruct upon circumstantial evidence. It is sufficient answer to say he failed to request such an instruction when given the opportunity to do so, failed to raise an objection at the time the instructions were presented to the attorneys for approval, and failed to raise the point in his motion for a new trial. He has thus waived his right to raise this issue on appeal. It would further appear that if anyone were prejudiced by a failure of the court to give a proper instruction to the

jury on circumstantial evidence, it was the defendant, for clearly such an instruction might well have served to strengthen the counterclaim of the defendant whose case rested largely on such evidence.

Having found no reversible error, the judgment of the trial court must be affirmed.—Affirmed.

All JUSTICES concur except SMITH, J., not sitting.