Jerome Rosin, appellee, v. Northwestern States Portland Cement Company, appellant.

No. 50175.

(Reported in 107 N.W.2d 559)

FEBRUARY 8, 1961.

Westfall, Laird & Burington, of Mason City, for appellant.

Breese & Cornwell, of Mason City, for appellee.

PETERSON, J.—This is an action for damages for personal injuries and property loss sustained by plaintiff on August 13, 1957, when his automobile was run into by defendant's Diesel locomotive at the edge of Mason City.

Plaintiff testified that as he traveled east on a country road he observed a railroad sign which caused him to be on the lookout for any train that might be approaching. He was driving on a new road. The rock base had been filled in, and an oil coating was placed on top of the base. Preparation was being made for the asphalt top. It had rained that morning. He was driving at from 40 to 45 miles per hour until he saw the train appear from behind brush and trees causing him to apply his brakes. Because of the slippery condition of the surfaced road he was unable to bring his car to a stop before coming upon the track, and the locomotive struck the car about the center of its right side, pushing it 150 feet down the track without upsetting it. He testified that the next day he measured his skid marks which started some 176 feet from the track. He claimed that after he knew of the location of the railroad he looked constantly both north and south for a train, but neither saw nor heard one until it was too late to avoid the collision. When asked why he did not sooner see the train he said, "There was no way I could really see it on account of the tall cornfield and all the trees growing up in the corner of it." He said he

did everything he could to avoid the accident and that it occurred, not because he was going too fast, but because he did not have traction on the slippery road.

There was a cornfield south of the highway, the east fence of which was 212 feet west of the railroad track and trees and brush along the right of way were also an obstruction to the view of trains from the south.

The speed of the Diesel, which was pulling five gondolas or dump trucks, was approximately 20 to 25 miles an hour before the brakes were applied. The bell on the Diesel was not rung, but one member of the train crew stated the whistle was blown 300 feet south of the crossing. Plaintiff denied hearing it. The automatic air brakes on the train had not been connected.

The gondolas were loaded with clay and weighed about 30 to 40 tons each. The clay was being hauled on defendant's private railroad to its Mason City cement plant.

The jury returned a verdict for $20,000. Trial court ordered reduction to $14,353 or a new trial would be granted. Remittitur was filed. Defendant appeals.

Appellant assigns seven errors, with several brief points under some alleged errors. The pertinent complaints and those needing attention can be considered under five alleged errors. 1. In permitting plaintiff to amend his petition by alleging specific grounds of negligence after the two-year statute of limitations had expired. 2. In failing to direct a verdict on account of plaintiff's contributory negligence. 3. In submitting Instruction No. 9 as to warning device at the crossing if the jury should find it more than ordinarily dangerous. 4. In giving confusing, misleading and inconsistent instructions. 5. The verdict was excessive.

I. Plaintiff in his petition alleged the defendant on or about August 13, 1957, negligently operated its railroad train over and across a highway in Cerro Gordo County, which train collided with an automobile driven by the plaintiff upon said highway. In January 1960, with leave of court, he filed a second amendment to his petition in which he alleged eight grounds of negligence, four of which were based upon statutory law, one on an ordinance and three on common law.

In substance the allegations in the amendment were that the

defendant was negligent in failing to have its engine and cars equipped with efficient automatic or power brakes so the engineer could automatically control the train as provided by section 477.14 of the 1954 Code; in failing to sound the whistle at least 60 rods from the crossing and ring the bell as provided by section 478.19; in failing to keep a lookout and to provide a flagman or some adequate warning device at the crossing.

The court submitted the statutory and one of the common-law specifications. Defendant charged the specific grounds of negligence alleged a new cause of action, which, so far as the personal injuries were concerned, was barred by the limitation statutes.

Section 614.1(3), 1954 Code, provides that actions founded on injuries to the person may be brought within two years after their causes accrue and not afterwards. Plaintiff was injured on August 13, 1957, filed his petition February 5, 1959, and his challenged amendment on January 16, 1960. The question is, did the amendment state a new and distinct cause of action which was barred by the statute? We hold it did not.

Rule 88, Rules of Civil Procedure, provides, "The court, in furtherance of justice, may allow later amendments, including those to conform to the proof and which do not substantially change the claim or defense." Permission to file amendments is largely within the discretion of the trial court. Elson v. Nickles, 240 Iowa 292, 36 N.W.2d 343; Bashford v. Slater, 250 Iowa 857, 96 N.W.2d 904, and cases cited.

In Terpstra v. Schinkel, 235 Iowa 547, 552, 17 N.W.2d 106, 109, we quoted from Jarozewski v. Allen, 117 Iowa 632, 635, 91 N.W. 941, 942: "It is too well settled to admit of the citation of authorities that under the practice prevailing in this state the allowance of amendments at almost any stage of a trial is the rule, and the refusal of such privilege is the exception." A pleader is entitled to claim as many grounds of actionable negligence as flow from his pleaded statement of facts. Sutton v. Moreland, 214 Iowa 337, 242 N.W. 75.

An examination of the amendment discloses that it does not state a new or different cause of action from that alleged

in the petition. Negligence was charged and the amendment merely supplied such details as would have been furnished had a motion for more specific statement been made and sustained.

"It is well settled in this state that the commencement of an action tolls the statute of limitations, and that the statute will not be available as a bar to any appropriate amendment which seeks to amplify or correct the original petition and to support the identical cause of action purported to be set forth therein." Emeny v. Farmers Elev. Co., 194 Iowa 282, 287, 189 N.W. 720, 722.

See also Taylor v. Taylor, 110 Iowa 207, 81 N.W. 472; Gordon v. Chicago, R. I. & P. R. Co., 129 Iowa 747, 106 N.W. 177; Cahill v. Illinois Central R. Co., 137 Iowa 577, 115 N.W. 216; Knight v. Moline, E. M. & W. R. Co., 160 Iowa 160, 140 N.W. 839; Hueston v. Preferred Acc. Ins. Co., 184 Iowa 408, 413, 168 N.W. 150; James v. Winifred Coal Co., 184 Iowa 619, 628, 169 N.W. 121.

"It is also true that a petition containing a general averment of negligence states a good cause of action, and, if unassailed by motion such as we have in the instant case, plaintiff would be entitled to introduce such evidence of specific acts of negligence as might tend to establish his case." Gebhardt v. McQuillen, 230 Iowa 181, 185, 297 N.W. 301, 303.

II. It is only in rare and exceptional cases that the question of contributory negligence is withdrawn from the jury and decided by the court as a matter of law. The evidence must be so clear that reasonable minds will not differ on the question of the presence of such negligence. From numerous decisions of this court we cite a few cases. Fitter v. Iowa Tel. Co., 143 Iowa 689, 121 N.W. 48; Toney v. Interstate Power Co., 180 Iowa 1362, 1378, 163 N.W. 394; Johnston v. Johnson, 225 Iowa 77, 83, 279 N.W. 139, 118 A. L. R. 233; Lawson v. Fordyce, 234 Iowa 632, 641, 12 N.W.2d 301, 306; Kinney v. Larsen, 239 Iowa 494, 498, 31 N.W.2d 635; Leinen v. Boettger, 241 Iowa 910, 919, 44 N.W.2d 73; Thompson v. Waterloo, Cedar Falls & Northern R. Co., 243 Iowa 73, 50 N.W.2d 363; Strom v. Des Moines and Central Iowa Ry. Co., 248 Iowa 1052, 82 N.W.2d 781; Plumb v. Minneapolis and St. L. Ry. Co., 249

Iowa 1187, 91 N.W.2d 380.

Plaintiff was moving toward a railroad crossing, and such a crossing is always a potential danger spot. There were obstructions to plaintiff's clear view of the track and train by trees, brush and tall corn. Like in so many railroad crossing cases, the questions of obstruction of view, and in this case unusual circumstances, enter into the situation. The trees and brush near the highway have since been cleared away. This is like the old familiar adage of locking the barn door after the horse is stolen. The unusual circumstance was the fact that because of the oil and rain plaintiff could not stop his car. If the road had been normal he could easily have stopped within 175 feet.

The question then is, should he have known his car would become a sled? He was employed by the road building company. He did not work on the road building section of the work. He was a heavy equipment operator at the place where the road material was being mixed for the highway. His knowledge of the effect of the spreading of oil on the rock base, and the rain that morning, was that of the ordinary motorist. Such motorist driving along a road of that type would normally feel that by applying the brakes his car could be stopped. Applying the well-known principles that we must look at the picture in the light most favorable to plaintiff; that unusual circumstances can be considered; and that obstructions to view should be taken into consideration, we can hardly say that as a matter of law plaintiff was guilty of contributory negligence.

As to the question of contributory negligence, outside of the general circumstances of the case, appellant leans heavily upon and emphasizes photographs introduced by it as Exhibits 2, 3 and 4.

The photographs were taken the day following the accident. The train was stopped and the camera placed at certain spots along the highway. There were stretches of trees and brush on the west side of the track for a long distance south from the crossing. The first clump of trees ran almost up to the highway right of way. Between these stretches of trees were open spaces where the only obstruction was the cornfield. Some of the corn

was shorter than normal. In these open spaces the photographs offered by defendant showed the top of the train above the corn. At one such spot there was a slight draw or depression. The stopping of the train at various places between the stretches of the trees and brush and the placing of the camera to photograph such situations were of doubtful probative value. The facts are present to analyze such photographs. On Exhibit 2 the engine was stopped 415 feet south of the crossing. The camera was placed 526 feet west of the crossing. On Exhibit 3 the engine was stopped 355 feet south of the crossing. The camera was placed 515 feet west of the crossing. On Exhibit 4 the engine was stopped 255 feet south of the crossing. The camera was placed 383 feet west of the crossing.

Present as to the taking of the photographs are the two factors of distance of the train south of the crossing and distance of the camera west of the crossing. The other factor to be considered is the respective speed of the train and the car. Plaintiff testified he was driving between 40 and 45 miles per hour. The train was going between 20 and 25 miles per hour. This means plaintiff was driving twice as fast as the train was moving. Therefore, when the witness testified as to Exhibit 3 that the engine was 355 feet south of the crossing and the camera 515 feet west of the crossing, the photographer did not have the camera placed anywhere near the spot where plaintiff's car passed at that time. According to relative speeds plaintiff was 710 feet west of the crossing; not 515 feet. Neither the photographs nor any other evidence discloses where the train was running when plaintiff was 710 feet west of the crossing. The other equations are similarly miscalculated.

This evidence on which appellant places such great stress to prove plaintiff's contributory negligence as a matter of law does not support the claim for two reasons: 1. The mathematics of the situation, as above outlined, do not place plaintiff in the same spots as the camera when the train was moving at the respective distances south of the crossing. 2. There is an obligation on a motorist to look both ways as he is approaching a crossing, and, if the train was in the vicinity photographed, plaintiff may not have been looking south during the two seconds involved in appellant's three photographs.

The jury could find that at the particular seconds in question plaintiff was properly looking to the north rather than the south. He had no way of knowing from which direction a train was coming, if one was coming.

The posed photographs offered in evidence by defendant do not create a situation which would lead reasonable minds to a conclusion of contributory negligence as a matter of law. Coonley v. Lowden, 234 Iowa 731, 12 N.W.2d 870; Davitt v. Chicago G. W. R. Co., 164 Iowa 216, 217, 145 N.W. 483; Case v. Chicago G. W. Ry. Co., 147 Iowa 747, 752, 126 N.W. 1037; Markle v. Chicago, R. I. & P. Ry. Co., 219 Iowa 301, 257 N.W. 771; Nederhiser v. Chicago, R. I. & P. Ry. Co., 202 Iowa 285, 208 N.W. 856; Butterfield v. Chicago, R. I. & P. Ry. Co., 193 Iowa 323, 325, 326, 185 N.W. 151, 153; Alitz v. Minneapolis & St. L. R. Co., 196 Iowa 437, 193 N.W. 423.

Justice Weaver, in Butterfield v. Chicago, R. I. & P. Ry. Co., supra, said: "This contention, that if, by use of engineering instruments, or by laying a 'straight edge' upon a map or blueprint made at leisure after the tragedy is over, it is made to appear that, if the traveler on the highway had looked from some designated station or standpoint, and if the train had been in the direct line of vision, he could have discovered it and avoided a collision, the court must say, as a matter of law, that his failure to do so is contributory negligence, is one which has been, with great persistence and tireless repetition, urged upon the court during the half century and more of the era of railway development in Iowa; and, with here and there a slight sporadic departure from the settled rule, we have steadily held that, if the traveler is shown to have looked and listened when within reasonable distance of the crossing, the court will not attempt to say, as a matter of law, that he is guilty of contributory negligence because he did not look or listen again at some other designated point, from which he might possibly or even probably have discovered the train. He is not charged with the duty of discovering at his peril every danger which perfect care and caution may reveal to him. The extent of his duty is to exercise the care of a person of average or reasonable prudence; and, it being shown that he did look and listen within a reasonable

distance of the crossing, the question whether he ought to have looked or listened again, at some other point or place, is for the jury, and not for the court."

Later in Nederhiser v. Chicago, R. I. & P. Ry. Co., supra, we stated the same principle in the following words at pages 290, 291 of 202 Iowa: "A traveler approaching a crossing is bound to look both ways, or up and down the tracks. This does not compel him to look in any particular direction first, and the frequency with which he should change the direction of his observation depends upon the circumstances, and usually presents a jury question. * * *

"When the jury could find that plaintiff looked and listened when within a reasonable distance of the crossing, a court ordinarily will not attempt to say, as a matter of law, that the traveler is guilty of contributory negligence because he did not look and listen again from some other designated point from which he might possibly or probably have discovered the train. We are not dealing with perfect care and caution on the part of the plaintiff, but with whether, under all the attending circumstances, she exercised ordinary care to protect herself from injury."

As general statements in support of submission of question of contributory negligence to the jury we quote from following cases:

In Leinen v. Boettger, supra (page 926 of 241 Iowa), we said: "* * * the issue of freedom from contributory negligence * * * is usually one of fact and not of law and is peculiarly and ordinarily for the determination of the jury, and that it is only in the rare and exceptional case and where the lack of reasonable care is so manifest, flagrant, and palpable that reasonable minds may fairly reach no other conclusion, that the question is one of law for the court. It is ordinary care, and not the highest degree of care, that is required." (Citations)

In Thompson v. Waterloo, C. F. & N. R. Co., supra (pages 78, 79 of 243 Iowa), we quoted with approval from Lawson v. Fordyce, 234 Iowa 632, 641, 12 N.W.2d 301, 306: "This court has held, times too numerous to name, that the issue of contributory negligence is ordinarily for the jury to determine.

It has said that: 'It is the well settled rule of law in this state that if there is any evidence tending to establish plaintiff's freedom from contributory negligence, that question is one for the jury.' * * * We have said that where reasonable minds may reasonably differ on the issue of contributory negligence it is for the jury."

In Fitter v. Iowa Tel. Co., supra (page 693 of 143 Iowa), this court said: "Proximate cause and contributory negligence are questions for the jury, save in very exceptional cases where the facts are so clear and undisputed, and the relation of cause and effect so apparent to every candid mind, that but one conclusion may be fairly drawn therefrom."

 III. Appellant assigns the giving of Instruction 9 as error. The court instructed: "a railroad company * * * is not negligent in failing to provide a flagman or other warning device at a crossing unless the crossing is more than ordinarily dangerous. If, however, a crossing is more than ordinarily dangerous and in the exercise of ordinary care for the protection and safety of travelers upon the highway a flagman or other warning device ought to be provided, then a railroad may be found negligent for failing to do so."

Appellant's position is that this is a private railroad of defendant for its own use in hauling material; that the usage is limited and that the traffic on the road where plaintiff was hit is not heavy. All this may be correct and still there may be an obligation resting on defendant to protect the crossing. Maybe the obligation was only to remove the obstructions of trees and brush, which defendant did after the accident. Maybe if defendant is going to permit obstructions to develop either in the form of new trees and brush, or even very tall corn in the early fall, it might be under obligation to put a warning bell on this private track.

The trial court did not tell the jury any of this was necessary as a matter of law. It simply said that if the evidence disclosed a condition above ordinary crossing danger, they could hold defendant negligent for not meeting the danger. In Russell v. Chicago, R. I. & P. R. Co., 249 Iowa 664, 671, 86 N.W.2d 843, 847, 70 A. L. R.2d 927, the court said: "It must be kept

in mind that we are not here deciding the crossing was hazardous; only that the question was for the jury. Nor are we holding that the crossing in question should be protected by gates, or by permanent flashing signals, or other type of permanent construction. That question is not in the case. Our holding is confined to the decision that the facts shown in evidence made an issue for the jury upon the negligence of the defendant in creating a hazardous situation and failing to protect travelers from it."

Appellant complains the trial court did not explain to the jury the meaning of "more than ordinarily dangerous." Counsel did not file written objections nor request a specific instruction on the subject. The record only discloses a colloquy between the court and counsel, without a definite conclusion. We do not believe a definition can be framed expressing more than the statement itself.

■■■ We have considered the subject and held many times that where a crossing is more than ordinarily dangerous the question of extra warning is for the jury. Bradley v. Interurban R. Co., 191 Iowa 1351, 183 N.W. 493; Lindquist v. Des Moines Union Ry. Co., 239 Iowa 356, 30 N.W.2d 120; Strom v. Des Moines and Central Iowa Ry. Co., 248 Iowa 1052, 82 N.W.2d 781; Russell v. Chicago, R. I. & P. R. Co., supra; Plumb v. Minneapolis and St. L. Ry. Co., 249 Iowa 1187, 91 N.W.2d 380.

The circumstances surrounding this crossing together with the actions of each party were such that the trial court was justified in submitting Instruction 9.

■■■ IV. Appellant contends the trial court gave confusing, misleading, inconsistent or contradictory instructions. This is a very general statement and does not mean much without specific statements. The only specific reference by appellant's counsel is to Instruction 13. This instruction is an analysis of the respective obligations of the two parties.

To consider this contention of defendant we must look at the instructions as a whole. The law of the case cannot be stated in one or two instructions. It is very probable that a question is not fully considered in one phase of the instructions, but

appears in other instructions, giving the jury all the information needed.

If all the issues are fairly stated, when all instructions are considered, as we hold they are in this case, there is no error. Odegard v. Gregerson, 234 Iowa 325, 334, 12 N.W.2d 559, 563; Stiefel v. Wandro, 246 Iowa 807, 68 N.W.2d 53; Hicks v. Goodman, 248 Iowa 1184, 85 N.W.2d 6; Newman v. Blom, 249 Iowa 836, 89 N.W.2d 349.

In Odegard v. Gregerson, supra, the court said: "We do not believe that a judicial Utopia will ever be reached when instructions submitted will meet with the approval of a defeated litigant. However, a reviewing court should and does consider that all instructions should be considered in their entirety."

V. Appellants allege the verdict is excessive, even after being reduced by the trial court from $20,000 to $14,353.

When defendant's train struck plaintiff's car in the center it pushed the car along the track 150 feet. The car did not upset, nor was plaintiff thrown out. When the train stopped he was unconscious, but regained consciousness in a few moments.

He had cuts on both knees and some on his arms and face. These injuries were not serious, nor of long duration. His serious and permanent injury was to his back. This was the injury which affected his earning capacity. At the time of injury he was earning $150 per week, with overtime. He was a heavy equipment operator, and worked at what they called the pit, where the road material was mixed. His normal salary would be about $2 an hour for a 40-hour week. He tried two or three times to return to this type of work but was unable to continue. One of his later doctors advised him to change occupation. At the time of trial he was a bookkeeper, at $265 per month.

He was normally a very strong young man. He played football, basketball and baseball all four years while in high school. He was in the air force basketball team, both in this country and two years in Japan.

During his attempt to correct his physical difficulty he consulted six doctors, including defendant's doctor witness. In laymen's language the diagnosis seemed to be that there had been "a quarter forward slip of the fifth lumbar vertebra."

As to pain, plaintiff testified: "Since the accident, there hasn't been a day I haven't had pain. * * * There have been nights I haven't slept a wink, pain all the time. * * * Have not had a full night's sleep since the accident."

The accident was on August 13, 1957. The trial was in January 1960.

His recent doctor advised use of a chair brace, with a long iron through the center to support the spine. He was wearing this brace at time of trial and said it relieved the pain somewhat, but did not eliminate it.

Plaintiff's latest doctor and defendant's doctor advised an operation either to remove some of the vertebrae or to have a bone graft between the fourth and fifth vertebrae. They said this had proven 70% effective. They estimated the medical and hospital cost at from $600 to $700. Plaintiff testified he was going to try it.

His car was damaged $1010 and his medical bills to time of trial had been $346.10.

Analyzing the injury and medical history, the pain and suffering, the operation, and the problematical situation as to the future, we approve the decision of the trial court in not making a greater reduction in the verdict.

VI. Appellee moved to dismiss the appeal on the ground appellant's opening brief did not comply with rule 344, R. C. P. While there was not strict compliance the errors relied on for reversal were set out in separate divisions, supported by brief points and arguments and in view of our liberal interpretation of the rules in the past it would not seem the infringements here should result in a dismissal. We deem it our duty to dispose of appeals on their merits whenever it can be done, as in this case, without injustice to the complaining party. The motion is accordingly denied. Agans v. General Mills, Inc., 242 Iowa 978, 48 N.W.2d 242; McBeth v. Merchants Motor Freight, Inc., 248 Iowa 320, 79 N.W.2d 303.

Some of the questions raised by appellant are close, but on the complete record we find no reversible error.—Affirmed.

GARFIELD, C. J., and OLIVER, THOMPSON and THORNTON, JJ., concur.

HAYS and LARSON, JJ., dissent.

BLISS and SNELL, JJ., take no part.