NORA M. WEPPLER, executrix of estate of Ira C. Weppler, deceased, appellant, v. OTIS SMITH et al., appellees.

No. 50246.

(Reported in 108 N.W.2d 247)

MARCH 7, 1961.

Jones, Cambridge & Carl and E. S. Holton, all of Atlantic, for appellant.

E. S. White, of Carroll, and Harold DeKay, of Atlantic, for appellees.

PETERSON, J.—This is an action by Nora M. Weppler as executrix of the estate of her husband, claiming damages from Otis and Larry Smith for his death. The case involved an automobile accident in Cass County about eight miles south of Atlantic at the junction of U. S. Highway No. 71 and Highway No. 414. The accident happened on June 5, 1959, at approximately 6:30 p.m.

Mr. Weppler was a farmer living two miles west and about one-half mile south of what is known as the Fletcher Store. On the evening of June 5 he started to drive to the store to get some feed. He drove a 1957 Ford automobile.

Otis Smith was the owner of a 1958 Chevrolet. The defendant Larry Smith was his sixteen-year-old son, driver of the car, with his father's consent. Three boys, Larry Smith, Guy Smith, fifteen years old, and Gary Bannick, fourteen years old, had entered into an arrangement to go in Mr. Smith's car to Essex, to attend the wedding of a Wiota high school coach on the evening of June 5. Larry first picked up Gary at Wiota. He then drove to the farm home of Guy Smith and picked him up. Guy was sitting in the front seat with Larry, and Gary was sitting in the back seat. The testimony of the three boys was taken by plaintiff's counsel in deposition form about ten days before the trial. Plaintiff offered the depositions in evi-

dence. The trial court referred to the evidence of the three boys in its ruling on motion for directed verdict. Counsel for defendants in oral argument stated he was agreeable to the use of the contents of the depositions in our consideration of the case.

Larry testified they were driving south on Highway No. 71 at a rate of from fifty to sixty miles an hour. He stated that as they approached the Fletcher Store he slowed down to forty-five miles an hour.

As Mr. Weppler drove east on Highway No. 414 the physical evidence shows that after he had crossed Highway No. 71 the Smith car came across the highway and struck Mr. Weppler's car broadside. It pushed the car about 40 feet, throwing Mr. Weppler out of the car and causing his death.

Outside of Mrs. Weppler's testimony as to her being appointed executrix, and as to the details of Mr. Weppler leaving home on the evening of June 5, the only witnesses proffered by plaintiff were Mr. Tom McDermott, the proprietor of the Fletcher Store, and Glen Green, a member of the Iowa Highway Patrol, living at Atlantic.

Mr. McDermott testified that his store was closed and he and his family were in the back yard having a picnic. He heard the blowing of a horn and immediately thereafter a crash of cars. He rushed to the front of the store where he found Mr. Weppler's Ford facing toward the northwest near the store. Mr. Weppler was lying a few feet from the car close to the front of the store. The Smith car was facing toward the southwest. Two of the boys were in the car, but Gary Bannick had been thrown out and was sitting beside the car.

The location of the impact and crash of the cars can best be shown by the testimony of Mr. McDermott. He stated: "I examined Highway 71 following the accident, immediately after the accident and there was no debris on it. There wasn't any broken glass out on Highway 71 to my knowledge. There was debris spread all around my driveway and from my driveway to the shoulder, from the shoulder, the edge of the pavement, toward my building. I observed on my driveway broken glass, pieces of chrome, hub caps, dirt, oil—all those things lying there that evening."

Mr. Green arrived about fifteen minutes after the accident. He testified that he and Mr. McDermott jointly took measurements as to the point of impact and as to the skidding. He stated there was a gouge mark on the east edge of Highway No. 71 pavement. It looked like it had been made by some very hard object. He stated that when he and Mr. McDermott measured the distance they found that the length of the skid mark from the east edge of the pavement to the Weppler automobile, as it came to rest, was 41' 3". He also testified that on the county road as it ran east of the paving and 50' north from the gouge mark appeared some scuff marks in the gravel.

Mr. Green's statement as to the point of impact can best be shown by his testimony: "There was no debris around the intersection itself. We observed debris all over the filling station driveway and there was glass and dirt on the driveway. The glass was broken in the automobiles I observed there. None of the broken glass extended out to the highway that I observed. The broken glass was within the whole area scattered east up toward the building. No part of the skid mark of 41' 3" appeared on the paved portion of Highway 71."

Gary Bannick, in the back seat of the car, testified that he had no recollection of seeing the Weppler car. He testified he blacked out. He was suffering from retrograde amnesia. He had a slight brain concussion and was taken to the hospital. The accident happened on Friday and he testified he did not know anybody until the following Tuesday.

Guy Smith testified that he was sitting in the front seat with Larry, but that he was partly turned around looking at Larry and Gary and was not looking toward the highway in front of the car. He did not see the Weppler car until they were within ten or fifteen feet away. He stated he did not know where the Smith car was at that time. The impact occurred within a split second after he saw the car. He stated it happened so quickly that he could not tell whether they were on the east or west side of the road at the intersection. He also stated he blacked out temporarily.

Larry Smith testified he saw the car about 125 feet away. He states he did not put on his brakes. He was going about 45

miles an hour. He was unable to state where the Weppler car was with reference to Highway No. 71 as he was driving toward the intersection. He said he could not tell for sure whether the Weppler car was moving or standing still. He testified he was driving on the right-hand side of Highway No. 71 at all times. He did testify that after the wreck the two cars were over by the store east of the highway. He also testified Mr. Weppler had been thrown out of his car and was lying close to the store.

At the close of plaintiff's evidence motion for directed verdict was made on the ground that defendants were not guilty of any negligence and on the further ground that plaintiff's decedent was guilty of contributory negligence.

We agree with the able trial court as to its ruling concerning the question of negligence, when the court said: "As to that part of defendants' motion for a directed verdict * * * which is directed to the specific grounds of negligence alleged in the petition, I am of the opinion that there is sufficient in the evidence as to the physical facts surrounding the accident to give rise to reasonable inferences as to some of the grounds of negligence alleged in the petition. I am therefore of the opinion that the portion of defendants' motion directed toward the specific grounds of negligence should be and it is hereby overruled."

We also agree with the ruling of the trial court holding that plaintiff was not entitled to the benefit of the "No-eyewitness rule."

I. Appellant alleges she is entitled to the benefit of the no-eyewitness rule. The rule is that in the absence of eyewitnesses, or of any obtainable direct evidence as to what deceased did, or failed to do, by way of precaution, at or immediately before the injury, there arises a presumption or inference that he, prompted by natural instinct, was in the exercise of due care for his own safety. Edwards v. Perley, 223 Iowa 1119, 274 N.W. 910; Spooner v. Wisecup, 227 Iowa 768, 288 N.W. 894; Low v. Ford Hopkins Co., 231 Iowa 251, 1 N.W.2d 95; Riedesel v. Koch, 241 Iowa 1313, 45 N.W.2d 225; Plumb v. Minneapolis & St. L. Ry. Co., 249 Iowa 1187, 91 N.W.2d 380.

Plaintiff's two witnesses, Mr. McDermott and Mr. Green, did not see the accident, and could only testify as to the physical

facts. Gary Bannick suffered from retrograde amnesia and could not testify as to what happened. Guy Smith saw the Weppler car when 10 to 15 feet away. He said he blacked out, so could add no information as to what happened. Larry Smith, the driver, saw the car when it was 125 feet away. He contends he proceeded south on the right-hand lane. Physical facts negative this verbal testimony, but obviously he was an eyewitness.

There is another obligation on plaintiff in connection with the no-eyewitness rule. In Low v. Ford Hopkins Co., supra (page 253 of 231 Iowa), we said: "He was not entitled to the benefit of the no-eyewitness rule unless it appeared there was no obtainable direct evidence of decedent's conduct at, and immediately prior to, the time of her fall."

Plaintiff's counsel did not inquire of Mr. Green or Mr. McDermott on the witness stand as to whether they had discovered an eyewitness among the many people who promptly assembled. Larry Smith said he heard of an eyewitness, but could not remember his name. This lead could have been pursued. On the complete record we are not justified in invoking the benefit of the rule on plaintiff's behalf.

It is not necessary to invoke the rule to justify submission to the jury.

In the leading and oft cited case of Smith v. Darling & Co., 244 Iowa 133, 56 N.W.2d 47, defendant Sperfslage was an eyewitness. He and plaintiff's decedent were the only witnesses. Sperfslage's testimony was contrary to the circumstances as established by the physical facts. Even though this was true, we held in view of the fact that he could testify as an eyewitness, the case was taken out of the no-eyewitness rule. We reversed, and held the case should be submitted to the jury.

We submit a sketch of the Fletcher Corners area as an aid in visualizing the roads, cars, and especially the point of impact and the place at which the cars came to rest.

North

FLETCHER CHAPEL

HIGHWAY 71 — 18′ WIDE

WEST

GRAVEL ROAD

Road 414 Black Top 24′ Wide

Gas Pumps

FLETCHER STORE

Front

Front

LEGEND

A. Smith Car — 125′ From "C"
B. Scuff Marks in Gravel
C. Gouge in Concrete
D. Debris Starts at Impact
E. Skidmarks from Weppler's Car Pushed Sideways
F. Weppler Car at Rest
G. Smith Car at Rest
H. Weppler's Body

II. The trial court directed verdict for defendants on the basis of plaintiff's decedent being guilty of contributory negligence as a matter of law. Withdrawal of the question of contributory negligence from the jury and deciding the question as a matter of law is very rare. The evidence of contributory negligence must be so clear that reasonable minds will not differ on the question of the presence of such negligence. We will cite only a few recent cases. Hayes v. Stunkard, 233 Iowa 582, 10 N.W.2d 19; Hackman v. Beckwith, 245 Iowa 791, 64 N.W.2d

275; Weilbrenner v. Owens, 246 Iowa 580, 68 N.W.2d 293; Brower v. Quick, 249 Iowa 569, 88 N.W.2d 120; Auen v. Kluver, 250 Iowa 619, 95 N.W.2d 273; Kuehn v. Jenkins, 251 Iowa 557, 100 N.W.2d 604; Paulsen v. Mitchell, 252 Iowa 65, 105 N.W.2d 603; Rosin v. Northwestern States Portland Cement Co., 252 Iowa 564, 107 N.W.2d 559.

In Auen v. Kluver, supra (page 622 of 250 Iowa), this court said: "Contributory negligence and proximate cause, we have often said, are strictly issues of fact and are ordinarily for the jury except where, under the entire record, plaintiff's contributory negligence is so palpable that reasonable minds may fairly reach no other conclusion. Then and only then does the question become one of law for the court. [Citing cases]

"In Leinen v. Boettger, 241 Iowa 910, 926, 44 N.W.2d 73, 82, we said: 'It needs no citation of authority that the issue of freedom from contributory negligence on the part of the plaintiff is usually one of fact and not of law and is peculiarly and ordinarily for the determination of the jury, and that it is only in the rare and exceptional case and where the lack of reasonable care is so manifest, flagrant, palpable that reasonable minds may fairly reach no other conclusion, that the question is one of law for the court. [Citing many cases.]' We have never departed from this rule and we are not so inclined at this time."

III. Physical facts can be so clear and obvious that submission of the case to the jury on the question of contributory negligence is essential. This rule has been definitely established in many recent Iowa cases. Hayes v. Stunkard, 233 Iowa 582, 10 N.W.2d 19; Smith v. Darling & Co., supra; Hackman v. Beckwith, 245 Iowa 791, 64 N.W.2d 275; Bokhoven v. Hull, 247 Iowa 604, 75 N.W.2d 225; Clark v. Umbarger, 247 Iowa 938, 75 N.W.2d 243; Soreide v. Vilas & Co., 247 Iowa 1139, 78 N.W.2d 41; Brower v. Quick, 249 Iowa 569, 88 N.W.2d 120; Auen v. Kluver, supra. Also see following C. C. A. cases, involving Iowa law, Van Wie v. United States, 77 F. Supp. 22; Guyer v. Elger, 8 Cir., 216 F.2d 537.

The fundamental statement is well expressed in Soreide v. Vilas & Co., supra, at page 1143 of 247 Iowa: "The evidence

must be such as to make plaintiffs' theory of causation reasonably probable, not merely possible, and more probable than any other theory based on such evidence. It is not necessary the testimony be so clear as to exclude every other possible theory. [Citations] Hackman v. Beckwith, 245 Iowa 791, 795, 64 N.W.2d 275, 278, adds following the statement of the above rule: 'But this means only the evidence must be such as to raise a jury question within the limits of the foregoing rule; it need not be conclusive.' "

The case at bar is as strong, or stronger, as to submission, than several recent cases in this court where we have approved submission either by affirmance when submitted, or by reversal when not submitted. We will review the question in a few cases.

In Hayes v. Stunkard, supra, plaintiff's decedent, Mrs. Verbeckmoes, was killed by a truck driven by defendant's employee Knutson. She was walking across the street when struck and tossed up on the parking. Mr. Knutson testified she stepped off the curb into his pathway. However, the physical evidence established the fact that if she had stepped off the curb as he said, she would have been struck on her left side, whereas she was unquestionably struck on the right side. On the basis of the physical facts the directed verdict of the trial court was reversed and this court held it was a question for the jury. The court stated at page 586 of 233 Iowa: "It is the general rule that when the evidence fairly presents two theories as to the cause of an injury, and both theories receive rational and reasonable support in the evidence, then the question is for the jury."

Hackman v. Beckwith, supra, was a case involving liability as between two trucks, one weighing 37,000 pounds and the other weighing 12,000 pounds. The question was as to which truck was in the wrong pathway when they met and collided. Mr. Hackman died and the question to be decided pertained to the testimony of Mr. Beckwith as compared with the physical facts. In the decision on page 796 of 245 Iowa we stated:

"These tire tracks, the respective weights of the two trucks, the fact that the outfit driven by the plaintiff's decedent was a combined unit, which would make it most difficult to drive both the tractor and trailer to the right after the collision, so that

they would end in a straight line against the curb, and the nature of the damage sustained by the respective vehicles, we think clearly made a jury question, both upon the issues of defendants' negligence and of plaintiff's contributory negligence. * * * In any event, the deductions to be made from the positions of the vehicles as they come to rest after an accident, the tracks found on the roadway, and the location of dirt and debris from collisions, are ordinarily for the jury."

Further considering Smith v. Darling & Co., supra, it appears it also involved a head-on collision. Plaintiff's decedent sued defendant and defendant's driver, Sperfslage. The only direct testimony was by said defendant. Plaintiff's case rested wholly on circumstantial evidence. The question was whether the collision occurred on decedent's (north) or defendant's (south) side of the highway. The trial court entered judgment for defendants notwithstanding verdict in favor of plaintiff. We reversed. In the decision on page 142 of 244 Iowa we stated: "It must be admitted the question whether this case should have been submitted to the jury is close. It must also be admitted it is a matter of some speculation and conjecture as to the precise manner in which the collision occurred. But we think it is not fatal to plaintiff's case that the exact position of the two vehicles or the exact manner in which they collided is not shown provided there is substantial evidence the collision occurred on decedent's side of the highway."

We will again refer to Soreide v. Vilas & Co., supra, at page 1149 of 247 Iowa, which involved the question of circumstantial evidence by physical facts as compared with direct testimony. The case was submitted to the jury and judgment was entered on verdict in favor of plaintiff. In the decision we said: "As we have indicated, there is persuasive evidence— circumstantial, it is true—the cars crashed in the north lane, contrary to Vilas' version of where the collision occurred."

Brower v. Quick, supra, involved a similar question of which of the parties was in the wrong lane. Mrs. Quick was killed, but Mr. Brower, the other motorist, sued her estate. The estate filed a counterclaim. Jury returned verdict in favor of defendant, holding that the physical facts established that Mrs.

Quick was in the right lane. We held the issue was for the jury.

See also the following cases as supporting the theory that circumstantial evidence as opposed to direct evidence can generate a jury question: Hawkins v. Burton, 225 Iowa 707, 281 N.W. 342; Davidson v. Vast, 233 Iowa 534, 10 N.W.2d 12; Riedesel v. Koch, supra.

IV. Several miscellaneous questions were raised, and allegations made, in the respective arguments, bearing on the question of contributory negligence. We will consider them briefly.

■ There was evidence that after Mr. Weppler passed the chapel, he could look north on Highway No. 71 a distance of 700 feet. This is not controlling, as the physical facts show that the Weppler car was east of the pavement when the Smith car reached that point in the highway. If the Smith car had continued south in its proper west lane, as Larry testified, it would have passed back of Weppler when he was at least 10 feet away. For some unaccountable reason Larry veered toward the left, crossed the pavement, and struck the center of Mr. Weppler's car. Larry was asked about this fact, but persisted in saying he was driving at all times in the west lane. The only point at which he relented under examination was when he admitted that when his car came to a stop he was over near the store, which was 40 feet east of the pavement.

Mr. Green testified Exhibit 4 shows some glass pieces and possible small rocks on the west side of Highway No. 71. He said he had not noticed them on the road. This evidence on the exhibit is very indistinct. Mr. McDermott did not observe the glass or rock. Appellees place considerable weight on this evidence, but we do not deem it significant. The physical facts clearly and conclusively show the point of impact was east of Highway No. 71.

We hold the question of plaintiff's freedom from contributory negligence should have been submitted to the jury.

The case is reversed and remanded for new trial.—Reversed and remanded.

All JUSTICES concur.